## STIRMAN vs. CRAVENS.

1. PRACTICE IN EQUITY: *Parties, when new should be made.*
   Whenever it is discovered in the progress of a cause that the rights of the parties already before the court cannot be finally determined without other parties, they *must* be brought in.
2. REALTY: *House of one on land of another, is not.*
   A house erected by one on land of another, with his consent, may be considered as personal property, distinct from the land. In such case the value of each may be referred to a master, and on the coming in of his report, if the parties will not agree for a purchase by one from the other, the court should order a sale of lot and house together, and divide the proceeds in proportion to their respective values found by the master.

APPEAL from *Washington* Circuit Court.

Hon. J. M. PITTMAN, Circuit Judge.

———— *Davidson*, for appellant.

*J. D. Walker*, ————*Gregg, contra.*

EAKIN, J. :

This cause is the same reported in 32 Ark., 548. After it was remanded to the Washington Circuit Court, the plaintiff below, by leave of the court, and against the objections of defendants, filed an amended complaint, and, upon their motion, the cause was transferred to the equity docket. The complaint alleged : That in 1866 James W. Stirman owned and possessed lot six (6), in block No. 16, in the town of Fayetteville, and at the same time Brooks and James E. Trott, partners in the mercantile business, found it necessary to erect a new store-house, but had no ground, nor sufficient means to purchase. They had received a large portion of their stock in trade from McKee & Co., of Fort Smith, on a credit, and expected to build out of the proceeds of the goods. Brooks declined to build unless he or his partners could procure title to a lot. They proposed to J. W. Stirman to go into business with them, and convey his lot for the purpose. This he declined ; but finally, to accommodate Trott, with whom he was very intimate, and in view of a future partnership with Trott after Brooks should retire, he made the deed. Trott promised to make it all right, by and by. The deed was not witnessed nor recorded, nor intended so to be. There was no consideration, and Trott, amongst his friends, did not claim it as his property. In consideration of said privilege of building, Trott & Brooks agreed to pay for the use of the lot, and a small building formerly on it, $15 a month as long as they should use it, and to erect a house worth $800, to be accounted for by Stirman when he should afterwards become a partner, or when the lot might be returned. Afterwards Brooks & Trott built a house worth over twice as much. Afterwards Stirman advanced to Trott large sums of money, amounting in all to more than $2,700. About a year after the erection of the house Brooks sold out to Trott, who continued to occupy it until his death, in March, 1870, and his

administrator, E. J. Stirman, afterwards, until April, 1873, without payment of rent by either, and without paying said J. W. Stirman for his services as clerk in the store, which had been rendered on a contract for $75 per month.

No partnership had ever been entered into, as contemplated. James W. Stirman declined to do so on account of the embarrassed circumstances of Trott, but remained a clerk in Trott's store until Trott's death, as aforesaid.

During his life Trott urged Catherine W. Stirman to accept from said James W. (who was her son), a deed of the lot, assuring her that his own deed was not acknowledged nor recorded, and would not stand in the way of her title. It is further alleged that Trott destroyed his deed. The value of the house erected has depreciated to $700 or $800.

After the death of Trott, said James W., on March 9, 1872, conveyed the lot to his mother. The deed is exhibited, and shows that it was made for love and affection and for one dollar. The deed conveys the lot, "except the two-story frame store-house occupying the front portion of said lot, and belongs to the estate of J. E. Trott, deceased."

Afterwards, on June 18, 1872, said Catherine W. Stirman, with her husband, James H. Stirman, conveyed to plaintiffs, Cravens and Smith, a part of said lots by metes and bounds, for $1,000, Comparing the two deeds, it appears that James W. conveyed to his mother (saving the house in front) a lot fronting 30 feet on the square and running back, north, 155 feet to an alley. This is given as the description of said lot No. 6. The deed to plaintiff conveys 20 feet 9 inches off the east portion of this lot, without any reservation, leaving 9 feet 3 inches off the west side still in Mrs. C. W. Stirman.

The complainant alleges that said E. J. Stirman, as administrator of Trott, claims the right and possession of the part conveyed to complainants by said last named deed. The widow

and heir of Trott are made parties. It is alleged that the purposes of the original conveyance to Trott have been accomplished, and that the rents due from said Trott, and his representatives, to J. W. Stirman, exceeded the value of the house when it came into possession of complainants. Besides, there was due Stirman from Trott the money loaned, and clerk's hire.

The prayer is for an account of the transactions between said Trott and J. W. Stirman, and that all claims of Trott's representatives regarding the improvement be declared satisfied and extinguished; that Trott's deed be declared void; and that complainant's title be quieted; with the usual prayer for general relief.

The widow pleaded the statute of limitation and the minor put in a general denial by guardian. The administrator demurred generally and moved to strike out portions of the complaint. The demurrer was overruled, and the administrator answered.

The answer denies that Brooks & Trott were unable to procure another lot, that Trott desired a partnership with J. W. Stirman, or held out any inducements therefor. Admits the execution of the deed to Trott and asserts that it was intended to convey title in fee simple. Admits that Trott was in embarrassed circumstances and so continued until his death. Puts in issue the alleged promise to pay rent, and the agreement to reconvey. Admits the erection of the house worth $2,200 and that Stirman had loaned money and rendered services as clerk as alleged, but says all these claims have been duly probated against the estates of Trott. Denies all knowledge or belief as to the fact that Trott urged Mrs. Catharine W. Stirman to take a conveyance of the lot, or asserted that his own title was invalid; or of the destruction of the deed by Trott. Admits his possession until the common law suit

was determined and writ of possession issued ; but sets up the reversal of that judgment and claims that plaintiff held possession wrongfully under said writ, after the execution had been superseded.   Without further recapitulation, it may suffice to say that the answer admits all the conveyances, and puts in issue all material allegations to the effect that the original conveyance to Trott was in trust and not *bona fide* for the purpose of vesting title.

After the former decision of this court as to the effects of an acknowledged deed, the remedy of complainants was no longer clear and unembarrassed at law.   The legal title was in Trott, and the remedy was in equity to show that the conveyance was made under such circumstances as to create an implied or resulting trust between the parties in favor of the grantor.   It was within the discretion of the court below to permit the amended complaint to be filed, and to transfer the cause to the equity docket—and the discretion was wisely exercised.   It did not make a new suit.   The contest for the property was substantially the same, only changed in form to meet the new aspect of the cause resulting from the decision of this court.   It would not have been in furtherance of justice to have compelled complainants to commence *denovo* ; and new parties not only may, but MUST, in all cases be brought in whenever, in the progress of a cause, it is discovered that the rights of the parties already before the court cannot be finally determined without them.   These views dispose of the demurrer, and the objection to the practice.

The theory of the bill was that the moneys owed by Trott to Stirman should be applied as payments upon the improvements made by Trott.   If there could be proved any such understanding between the original parties, of which complainants could take advantage, it might have been proper to show it in this suit ; but it is essential to an account of such

an appropriation that J. W. Stirman should be made a party. Without him all parts of the bill framed with reference to such an account, should be disregarded. The equity of the bill rests upon the allegagation of a trust in Trott, to the benefits of which complainants had succeeded, and which entitled them to the possession and enjoyment of the property as against Trott's estate, independent of any adjustment with J. W. Stirman. In no other view can the bill stand, unless Stirman be made a party. But in this view with regard to the lot, excepting the house, the bill was good against a general demurrer. The view already announced of the proper practice disposes also of the plea of the statute of limitation. It was a continuation of the same suit against the terre-tenants.

The answer puts in issue facts material to the equity of the bill. These facts, as revealed by the pleading, exhibits and deposition, are substantially as follows :

In the year 1866 Trott & Brooks were doing a mercantile business in Fayettville, upon goods furnished them by McKee & Co. of Fort Smith. They desired to build a more commodious business house, in doing which it would be necessary to use means derived from the goods furnished by McKee & Co. Brooks declined to build unless upon a lot to which they might have title, and it was further desirable that they or one of them should own the land, for the satisfaction and securing of McKee & Co. J. W. Stirman was the intimate friend of Trott, and made him a conveyance of the lot in question for the purpose—that is, principally, to induce Brooks to consent to the building and for the security of McKee & Co., but in some respects for the benefit of Trott also. No consideration passed; but it was understood that in the future transaction between Stirman and Trott the expenses of the latter in building were to be allowed. The understanding was that the house was to cost $800; but the firm, with Stirman's knowl-

edge and without his dissent, proceeded to erect a two-story frame building at a cost of about $2,200. These understandings were by parol, but the deed was absolute for the nominal consideration of $1,000. Afterwards, Stirman lent a considerable amount of money to Trott and served him for about twenty-five months as clerk at $75 per month, only five or six hundred dollars of which were repaid by credit of a store account.

It was further agreed that, meanwhile, the firm should pay Stirman rents on the lot and an old warehouse on it at the rate of $15 per month. The firm took possession, built the house and occupied it a few months, when Brooks sold out to Trott, who occupied until his death in 1870, and his administrator after him, until dispossessed by writ of possession upon the rendition of the first judgment below, which was afterwards reversed.

During Trott's lifetime, he urged Mrs. C. W. Stirman (the mother of James W.) to take a deed of conveyance of the lot in question from her son, who seems to have been considered in danger of wasting his property, assuring her that the purposes of his own deed had been accomplished; that it had never been recorded and would not stand in her way. No action was taken at the time upon these assurances. Trott was then, or soon after became, the son-in-law of Mrs. Stirman. After Trott's death in 1870, James W. Stirman probated against his estate his claim for money loaned, which was filed on the 9th day of June, 1871, and afterwards allowed for $3,028.87. Also his account for clerk's hire filed on the 2d day of September, 1871, and afterwards allowed for a balance of $899.81. Both these allowances were assigned by Stirman to his mother, Catherine W., on the 15th day of May, 1872. No settlement of rents appears ever to have been made.

Previous to this, on March 9, 1872, J. W. Stirman conveyed

the lot to his mother for love and affection and the nominal consideration of one dollar, " except the two-story frame store-house occupying the front portion of said lot, and belonging to the estate of J. E. Trott, deceased." Afterwards, on the 18th day of June, 1872, Mrs. Catharine Stirman, with her husband, conveyed a part of said lots by metes and bounds to said complainants for $1,000. Her conveyance leaves off about ten feet of the west side, running from the front back.

· The Chancellor found, upon these facts, that Trott held the lot in trust for Stirman, and to secure McKee & Co., and not adversely; that he afterwards disclaimed all title, in a conversation with Catherine W. Stirman, and that in pursuance of said advice Mrs. Stirman took the conveyance to herself; whereby the representatives of Trott were estopped from setting up title, and have no legal or equitable title left, nor right of possession. Further, that the rents of the said lot and the house thereon during the time the same was occupied by Trott were worth $1,080, and that the store-house so built was not worth more, and that such rents should go to the benefit of plaintiffs, who are the legal and equitable owners of that part of the lot. Whereupon the title to the whole part of said lot sold to them by Mrs. Stirman was decreed to complainants.

This decree was certainly erroneous in this, that it overlooked the reservation of the house in favor of Trott's estate, made in the deed to Mrs. Stirman. No interest therein passed to the complainants by the deed from her to them, nor any interest in any rents that might then be due from Trott or his estate to J. W. Stirman. He had never appropriated nor claimed that there should be appropriated any rents due him from Trott, to the extinguishment of Trott's interest in the house.

Such rent did not belong to complainants. They did not take the right to them by deed from Mrs. Trott, nor any right to the house itself. Mrs. Stirman never had either to convey.

After the conveyance to Mrs. Stirman, excepting the house and declaring it to be the property of Trott's estate, it remained the property of the estate, and any claim against the estate for past rents remained in Stirman. The question as to whether the rents due Stirman extinguished Trott's right to the house, remained a question between the estate and J. W. Stirman. Mrs. Stirman never acquired the right to that account, because the house never passed to her at all, much less to her vendees, who certainly had no rights to appropriate, for the payment of a house never conveyed to them, rents due to another person. In short, complainants never had any such right to the house vested in them as would authorize a court of chancery to decree them the absolute property upon ascertaining that an incumbrance had been removed. They took the lot subject to the easement of supporting another man's house ; if indeed, they acquired any title at all to the ground upon which the house stands. The decree attempts to compel a sale to them of property to which they had no claim, at a price determined by the court, and for a part consideration, the greater part of which they did not furnish nor ever owned.

Inasmuch as further proceedings must be had below, and the case is somewhat anomalous, it seems proper to indicate the views of the court with regard to the equities of the parties and the most advisable course to be pursued in adjusting them.

Although at common law the grant of a *house* carried the *land* upon which it stands (Sheppard's Touchstone, p. 90; Washburn on Real Property, book III, chap. 5, sec. 4, par. 26), and an exception of a house in a grant would be so construed, to retain it, this doctrine has been attended with many exceptions to meet the requirements of more complicated arrangements and modern usages of business. This court has held directly (in the case of *Witherspoon and Gilliam* v. *Nicholas, Sheriff*, 27 Ark., 332), "that a house erected upon the

Stirman vs. Cravens.

land of another, with the owner's consent, may be considered as personal property, distinct from the land. When the house in this case was erected, there was no agreement nor presumed intention that it should ever be removed ; and from the nature of the case it cannot be, without serious detriment and loss to the owner. The evidence leaves it somewhat vague and uncertain as to how the rights of the parties were to be adjusted in future. Any supposed arrangement for a future partnership was never carried out, and the property meanwhile stood thus : That Stirman owned the land, and Trott the house upon it— their interests being distinct, though indivisible. If there was any understanding that Stirman should pay for the house and take it, that was never done. Neither the money lent nor clerk's services were so applied. At the time of the conveyance to his mother, Stirman expressly recognized Trott's ownership as still existing, and neither his mother nor his vendee took any interest in it. Stirman had elected to consider his claim as personal against the estate of Trott, save as to rents ; and as to them his reservation in the deed indicates that he did not intend to claim an interest in the house on that account.

After the purchase by complainants on June 18, 1872, this distinct but indivisible interest continued between Trott's estate and complainants, and it devolves upon the court to devise a scheme for final adjustment and separation of their rights in accordance with the principles and practice of courts of equity. These are very flexible, and may be moulded by the court to suit each particular case.

It would be unjust to compel either party to sell to the other at a valuation, and equally so to compel the administrator of Trott to remove the property.

An account should be taken against the estate, of the rents of the lot and warehouse at $15 per month from the date of complainant's purchase to the date of the complainant's possession

under the writ of possession, and against complainants for the value of the rents of the two-story house (independent of the lot and warehouse) from the date of their possession to the time of taking the account, unless they choose sooner to redeliver, and a balance should be struck. On the same reference the master should be directed to take proof and report the several values of the house and the land upon which it stands. Upon the coming in of the report the parties should be allowed to agree upon a purchase of the interest of Trott's estate by complainants, and a decree entered to incorporate and confirm the agreement. Otherwise the court may order a sale of the house and lot together, and divide the proceeds in proportion to their respective values found by the master. In the adjustment of the proceeds the balance for rents, on the one side or the other, may be taken into the account, and the whole cost may be in the discretion of the court. Under the circumstances it would appear equitable to burden the house and land together with all the costs before partition of the proceeds, but the court does not mean to make this imperative on the Chancellor. He will exercise his sound discretion. So much of the decree as gives the lot to complainants, irrespective of the store buildings, is correct. So much of the decree of the court below as vests in complainants the property in the lot and all buildings thereon save the two-story building erected by Trott for a store-house, and the portion of the lot it stands upon, is affirmed. In other respects the decree must be reversed and the cause remanded for further proceedings, not inconsistent with this opinion.