RAEF, COUNTY CLERK, v. RADIO BROADCASTING, INC.

4-7726                                                    190 S. W. 2d 1

Opinion delivered November 5, 1945.

*Jay M. Rowland,* for appellant.

*William Bronson* and *Wootton & Land,* for appellee.

McFADDIN, J. This present appeal and the case of *Jensen* v. *Radio Broadcasting, Inc.,* 208 Ark. 517, 186 S. W. 2d 981, both, stem from the efforts of Radio Broadcasting, Inc., to settle its property tax liability for 1942, 1943 and 1944 on its own valuation figures. We refer to the present case as the "Racf Case," and the previous case as the "Jensen Case," and the appellee as "Radio."

In the Jensen case a complaint was filed in the Garland chancery court on November 17, 1944, for an injunction against Jensen, as delinquent tax collector of Garland county, to prevent him from seeking to collect from Radio $3,713.60 as 1942 taxes, which Radio alleged to be erroneous and void. Jensen contented himself with filing a motion to dismiss. No proof was offered. The chancery court granted a temporary restraining order when Radio made a $5,000 bond. Jensen appealed from the order granting the temporary injunction, and this court affirmed the chancery court in an opinion which concluded with this language:

"The chancellor's action in granting a temporary injunction upon the uncontroverted allegations of the complaint is sustained. The interests of the State and its political subdivisions pending a final hearing of the suit were adequately protected by a bond."

According to the unchallenged allegations in the briefs in the present case, the Jensen case is still pending in the Garland chancery court, to be tried on its merits.

Notwithstanding the pendency of the Jensen case, Radio filed in the Garland chancery court on December 14, 1944, a complaint in this Raef case, out of which comes this present appeal. In this Raef case the sole defendant was "Roy C. Raef, as County Clerk of Garland county, Arkansas." Radio alleged that Raef, as County Clerk, had custody and control of the tax books of Garland county for the years 1942, 1943 and 1944; that for each of these years Radio had personal property in Garland county of the value of $6,000, and had assessed the same at the figure of $2,000, and had paid 1942 taxes of $73.54, and 1943 taxes of $73.54; and would in due time pay 1944 taxes of $73.54; Radio also alleged that due to error the tax books disclosed an unpaid tax for 1942 in excess of $3,000, and that, due to a mistake, there was entered on the tax books for 1943 an erroneous valuation of $68,570 against the property of Radio (which would make a tax in excess of $3,300); and for 1944 there was an erroneous valuation of $50,000 against the property of Radio; and that Roy C. Raef, as County Clerk, should be authorized and directed to correct said erroneous valuations; and that in all such instances, the plaintiff did not receive any notice of any change in its assessment of $2,000; and that the plaintiff has no adequate remedy at law, and offered to do equity. There was no allegation as to *when* the entries were made of which Radio complained.

On January 3, 1945, Raef filed his motion to dismiss, in which he said, *inter alia,* "that he is the County Clerk of Garland county, and that he is not the proper person to change the tax records of Garland county. Defendant further states that this court is without jurisdiction in this matter; and that the plaintiff has an adequate remedy at law." The Garland chancery court evidently treated this as an answer, because Radio's evidence was heard on February 7, 1945.

Radio presented two witnesses, Kellam, the local manager of Radio, and McCormack, the president of Radio. Kellam testified that Radio took over station

KTHS on June 21, 1942, and that no investigation of taxes was made at that time; that on April 10, 1943, Kellam went to the assessor's office, and was advised that Radio's property was already assessed at $687.50 valuation, and the tax would be approximately $22, and would be payable in October, 1943. Kellam said that he signed an assessment sheet showing this valuation of $687.50. This is the 1943 assessment that now appears in the tax books to be $68,750 as the valuation. Kellam testified that in October or November, 1943, he received a notice from Jensen, the Delinquent Tax Collector, that the tax for 1942 was delinquent in an amount in excess of $3,700; and that Kellam immediately contacted the tax assessor and arranged for a conference between the tax assessor and Kellam and McCormack. McCormack and Kellam both testified that they had a conference with Gillenwater, the Tax Assessor, in November, 1943, about this 1942 tax, and that Wilson, the Tax Collector, was present and took part in this conference. (We interpolate here to point out that nobody even intimated that Jensen, the Delinquent Tax Collector, was ever notified of this conference, which was obviously being held for the purpose of defeating Jensen's efforts to collect the alleged delinquent tax.) McCormack and Kellam testified that they informed the Tax Assessor that the property was assessed for 1943 at a valuation of $687.50, and they offered to pay a 1942 tax based on a "fair valuation." The Tax Assessor had read in the newspaper that Radio had paid $225,000 for the KTHS station; and the assessor was desirous of basing an assessment on that figure. But Kellam and McCormack convinced the Tax Assessor that only the actual personal property of Radio was taxable, and that the full value of this personal property was $6,000; and on that basis, the assessed valuation was placed at $2,000, and agreed to by the Assessor and a check for $73.54 for 1942 personal property taxes was paid to Wilson, the Tax Collector, the same day of the conference, November 26, 1943. (We again interpolate to point out that personal property should be assessed at 50% of actual value under

§ 2038(c), Pope's Digest, and the certificate of the Commission empowered by that section.)

The witnesses testified that in this same conference the assessment for 1943 was made by Radio at a valuation of $2,000, and this was approved and signed by the Assessor. (We further interpolate to point out that the previous 1943 assessment of $687.50, according to Kellam, seems to have been overlooked or forgotten by the parties in this conference.) Kellam and McCormack further testified that the 1943 tax of $73.50 was paid, based on this $2,000 valuation, and that on March 22, 1944, Kellam assessed Radio's property at $2,000, and this was agreed to by the Assessor, and that no notice of any change had ever been received by anyone for Radio. Kellam testified that it was not until November 13, 1944 (evidently after Jensen had served the 1942 delinquent tax notice on Radio), that Kellam and his attorney checked the tax books and discovered, then for the first time, that the tax books reflected an unpaid 1942 *tax* in excess of $3,000, and a 1943 *valuation* of $68,750, and a 1944 *valuation* of $50,000.

Such was the evidence. Radio evidently treated the conference between Kellam and McCormack, on the one hand, and Gillenwater, the Tax Assessor, on the other, as a bargaining process whereby the value of $2,000 was determined; because, in the testimony, the attorney for Radio, explaining one of his objections to the cross-examination, said: ". . . we are not here on the question now of the court reassessing values; we are here to seek a carrying out of the agreements as to the acts that had been previously performed rather than asking the court to reappraise the station, and I don't believe matters relating to values are competent. . . . I might state, we are trying to have a specific performance of the contract, . . ."

On the evidence as hereinbefore detailed, the Garland chancery court on February 8, 1945, rendered a decree finding that Radio had paid its full tax liability for 1942 and 1943, and that the $2,000 assessed for 1944

was a correct assessment, and that upon paying the tax based on the $2,000 valuation, Radio would be discharged from all further tax obligations for 1944. Regarding the 1943 valuation of $68,750, the court found "that the Assessor without authority in law illegally entered upon the assessment roll the sum of $68,750 as the taxable value of the plaintiff's property, and that said assessment was increased by the Assessor from the sum of $687.50 without notice to or knowledge of such property owner or his agent; and that said increase in valuation by the said assessor was unlawful and void." Regarding the 1944 assessment of $50,000 the court found that the said Assessor "without authority in law and without notice to or knowledge of the plaintiff illegally entered upon the assessment roll the sum of $50,000 as the taxable value of the plaintiff's property, and that said assessment was increased by the Assessor from $2,000, without delivering to the property owner" any notice of the increase.

The court decreed that Radio be discharged from all liability for 1942 and 1943 taxes, and that the increased valuations for 1943 and 1944 should be expunged from the tax records by Raef, by attaching a copy of the decree to the records. From that decree Raef prosecutes this appeal.

I. *Absence of Necessary Parties.* At the outset we point out that only Raef was a defendant in the present case, and that only Jensen was a defendant in the Jensen case. If the decree in this present Raef case be sustained, then there is no tax assessment of record on which Jensen might proceed to a trial in his case, because the decree in this Raef case destroys all tax liability on which Jensen could proceed in his case for 1942 taxes. The statement of this fact demonstrates most clearly that the chancery court should have deferred any relief to Radio on this Raef case concerning 1942 taxes until Radio caused all necessary parties to appear before the court in the Raef case. In the Jensen case Radio alleged that, as Delinquent Tax Collector, Jensen had

served a notice on Radio that he was about to proceed to collect a tax of $3,070.15 for 1942. That suit is pending in the Garland chancery court, and Jensen is halted by a temporary restraining order and forced to await final trial. In the Raef case, Radio sought and secured a decree to the effect that Radio was free of any tax liability for 1942. This was the same issue involved in the Jensen case. Certainly, Jensen should have been a party in this Raef case, and the effect of Raef's motion to dismiss was to raise this issue of defect of parties. In 19 Am. Juris. 126, the rule is stated:

"Having taken cognizance of a cause for any purpose, a court of equity will ordinarily retain jurisdiction for all purposes; decide all issues which are involved by the subject matter of the dispute between the litigants; award relief which is complete and finally disposes of the litigation so as to make performance of the court's decree perfectly safe to those who may be compelled to obey it; accomplish full justice between the parties litigant; and prevent future litigation. All persons who are interested in the subject matter of dispute will be brought before the court in order that there may be entered and enforced a complete and effective decree which will finally adjust the rights of all concerned."

In *Stirman* v. *Cravens,* 33 Ark. 376, this court held that whenever it is discovered in the progress of a cause that the rights of the parties already before the court cannot be finally determined without other parties, they *must* be brought in. From a public policy point of view, Jensen, as Delinquent Tax Collector, was a necessary party to the Raef case, and since he was not a party in this case, the decree herein must be reversed and the cause remanded. There is some uncertainty as to who are all the necessary parties in a suit like this one. Certainly Jensen, as the Delinquent Tax Collector, was a necessary party concerning the delinquent taxes. The Tax Collector would be a necessary party concerning the current taxes. The decree finds that the Tax Assessor had illegally increased the assessment, so the Assessor might be a necessary party.

There seems to be a paucity of authorities on this question. In *Colorado, etc., Ry. Co.* v. *City of Crowley*, 134 La. 180, 63 So. 868, the Supreme Court of Louisiana, in discussing necessary parties in a suit involving an assessment, said: "The assessment had passed from the Board of Appraisers and had become final and could not be set aside contradictorily with that board alone without making the collector or the one in charge of the collection of the license tax a party to the suit."

Likewise, in *Millsaps* v. *Traylor*, 128 La. 1068, 55 So. 677, the Supreme Court of Louisiana held that when the complaint alleged that a tax assessing agency had acted illegally, then that agency should be permitted to be a party to the suit. In *McKay Radio Co.* v. *Town of Cushing*, 131 Me. 333, 162 Atl. 783, the Supreme Court of Maine, in considering the question of necessary parties in a suit involving municipal tax assessment, held that a suit against the town alone lacked proper parties, because the tax assessors were necessary parties. These cases from other jurisdictions are, of course, based on statutory proceedings (for review of assessments) quite different from our own statutes, but they indicate the general idea as to the necessary parties in suits concerning tax assessments. At all events, there was an absence of necessary parties in this Raef case, and for that reason the decree is reversed, and the cause remanded with the directions stated in the concluding paragraph of this opinion.

II. *Jurisdiction of Equity.* In his motion to dismiss, Raef challenged the jurisdiction of equity. This is not a suit against the Clerk to correct an error he might have made in extending the taxes (in performing his duty set forth in § 13758, Pope's Digest); but, rather, this is a suit to challenge or expunge an increased assessment made by the Assessor; and there is no allegation that this assessment increase was made other than during the period of time when the Assessor could have made such an increase by law. We mention this to clearly distinguish the holding in the case at bar from the holding in *Jensen* v. *Dierks Lumber & Coal Co., infra*, p. 262,

190 S. W. 2d 5 (case No. 7727), in which an opinion is delivered this day.

In *Arlington Hotel Co.* v. *Buchanan,* 110 Ark. 34, 160 S. W. 895, this court held that where the only issue is the alleged error of the County Assessor in assessing a valuation on the property—on that mere allegation—then equity has no jurisdiction to entertain a suit to review the action of an assessor. We there quoted with approval the language of Mr. Justice RIDDICK, in *Wells Fargo* v. *Crawford County,* 63 Ark. 576, 40 S. W. 710, 37 L. R. A. 371: " 'The assessment of the property of this express company having been committed by law to the board of railroad commissioners, a complaint for relief in equity is insufficient which only alleges that the valuation by the board is excessive; for, in the absence of fraud, intentional wrong or error in the method of assessment, the finding by the board cannot be overturned by evidence going only to show an error of judgment in the valuation of the property.' "

In 61 C. J. 894, in discussing equitable jurisdiction in the cases alleging over-assessment or discrimination, the rule is stated: "Since it is not the province of a court of equity to review or correct the proceedings of officers intrusted with the assessment of property, injunction will not ordinarily lie for excessive valuation in assessments where the taxpayer was either heard or given an opportunity to be heard, unless the assessment be palpably arbitrary, purposely prejudicial, and resulting from corrupt, malicious or illegal motives, or simply so grossly out of proportion to actual values as either to indicate dishonesty, or amount to constructive fraud."

When allegations in a complaint are *prima facie* sufficient to give equity jurisdiction under the rule above stated, the plaintiff must on hearing show the real value of the property involved, and come with open hands to pay the correct taxes. He cannot base his suit (as was here intimated in the evidence) on a claim that he is entitled to specific performance of an assessment made by agreement with the Assessor. Assessing is not a bar-

gaining process. When a taxpayer comes into equity on proper grounds and seeks relief against taxation, "he must make a full, fair, and complete disclosure of his property subject to taxation. He must show clearly that he has paid, or is willing to pay, all that he justly owes towards the public burden. 'He must come, not only with clean, but with open, hands.'" Such is the language used by the Kentucky Court of Appeals in *City of Georgetown* v. *Graves,* 165 Ky. 676, 178 S. W. 1035.

The Supreme Court of Oklahoma in *Rogers* v. *Bass,* 64 Okla. 321, 168 Pac. 212, quoted this language from *City of Collinsville* v. *Ward,* 64 Okla. 30, 165 Pac. 1145: " 'A party who seeks equitable relief against an assessment of which he complains must himself offer to do equity. He must offer to pay the amount of taxes which the facts show would be properly chargeable against him under a proper assessment.'"

Since the decree in the case at bar is reversed because of the absence of necessary parties, we need not decide whether the complaint here alleged a cause of action for equitable jurisdiction. What is said in *Jensen* v. *Dierks Lumber & Coal Co.* (case No. 7727) is clearly distinguishable from the question of equitable jurisdiction in the case at bar.

The decree of the chancery court is reversed, and the cause is remanded with directions to dismiss the complaint unless the plaintiff brings into court all necessary parties on a complaint which shows grounds for equitable jurisdiction.