**Herbert CRAMER, Respondent,**

**v.**

**Mervyn JENKINS, Appellant.**

**No. 51260.**

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

Marvin Pollard, Ludlow, Robert C. Frith, Chillicothe, for respondent.

Chapman & Chapman, by Nolan Chapman, Jr., Chillicothe, for appellant.

HYDE, Presiding Judge.

■ Action to determine title to an easement of right of way across land owned by defendant. Trial was by the court without a jury and judgment was that plaintiff had an easement 30 feet wide, north along the west line of defendant's land to the south bank of a drainage ditch and thence in a northeasterly direction 2178 feet along the bank of the drainage ditch to the south line of plaintiff's land. Defendant has appealed and claims the evidence does not show hostile use by plaintiff (actual, open, notorious, exclusive and continuous under a claim of right for the statutory period) but only permissive use revocable at defendant's pleasure. We have jurisdiction because title to real estate is directly involved. Sec. 3, Art. V, Const., V.A.M.S.; Dalton v. Johnson, Mo.Sup., 320 S.W.2d 569; see also West's Mo.Digest, Courts, 231(37).

Plaintiff's evidence was that the drainage ditch across the land of plaintiff and defendant, south of the tracks of the Milwaukee Railroad, was dug in 1910 and 1911 and is now two or three hundred feet wide. Plaintiff's land was northeast of defendant's land. It was bought by plaintiff's father in 1919 and in 1943 plaintiff bought the interests of his father's heirs. However, plaintiff had farmed it from 1919 on, reaching it by going across the land now owned by defendant, which was bought by defendant in 1945. From 1919 to 1954 plaintiff always went to this land by going along the south side of the drainage ditch; and during that period no one ever interfered or attempted to stop him from using that road. When he first began to use the way, the land now owned by defendant was owned by John Sherbeck, Herb Wollcott bought it in 1934 or 1935,

then one Bradley bought it in 1936 or 1937 and sold it to defendant in 1945. However, defendant had farmed the land (1941–1945) as Bradley's tenant before he bought it from Bradley. Defendant first questioned plaintiff's right to use the road in 1954 and this suit was commenced in 1956. At times, others farming land east of plaintiff's land (both landowners and their renters) came through plaintiff's land and out to the county road by way of the road plaintiff used along the drainage ditch, "for the purpose of hauling out load of grain, stuff like that, and if they went there to farm." Some had so used it even before 1919 when plaintiff's use began. Plaintiff never had a conversation with anyone about using this road prior to the one with defendant in 1954. Plaintiff testified: "Q Why do you use it? A To get to this patch of land. Q You had no other way in? A There is another way in but that's the nearest in."

Defendant's testimony was that in the winter of 1953–54 he stated to plaintiff about the road: "I would like to go to farming that ground up there, been all right for him to use it all these years but I thought maybe I ought to farm it from here on." Plaintiff said he was going to use it; but defendant said they finally agreed that plaintiff would pay defendant $500.00 for it. Plaintiff said he offered $250.00; "told him I would rather give him something than fuss with him." They had lawyers working on a contract but never agreed on a settlement.

Defendant remembered the land from 1916; the northwest part was then "pretty swampy" in ripgut swamp grass. Defendant said until he started farming it people went where they pleased and that he had "given many people permission to go down in there." Some of these went there to fish. He further testified as follows: "Q Did you ever give Mr. Cramer permission to go down through there? A No, I never did tell him. He went in. Q What was the reason for him using it? A Well, I guess, he told me that was the only way he had

to get to his farm. Q And when did you purchase this land? A 1945. Q And the argument or whatever that you had with Mr. Cramer in regard to using this alleged road was in the winter of '53 and 1954, is that right? A That's right, somewhere in there. * * * Q That was the first time you ever told him he couldn't, you didn't want him to use it? A Yes, that's right. Q First time you ever tried to stop him using it? A Yes, sir. Q During all that time he never asked you if he could use it had he? A Well, it was understood. Q During that time had he ever asked you to use it? A No, it was perfectly all right. Q Until 1953 and 1954? A Yes, sir. Q All that time he had gone ahead since 1941 when you started there farming it without objection on your part, gone along the south side of that drainage ditch up to his land freely without any objection? A Certainly." Previously defendant had been plowing north and south but in 1954 he decided he would "plow along the drainage ditch" and this precipitated the argument over plaintiff's use. Other material facts will be hereinafter stated.

Defendant's brief admits that plaintiff "has used this way for the statutory period and if he satisfies this court as to the other elements of prescription he has acquired the way he claims." However, defendant claims plaintiff's possession was not hostile. Defendant cites Gates v. Roberts, Mo.Sup., 350 S.W.2d 729, 732, saying: "'Hostile possession' means possession opposed and antagonistic to the claims of all others * * * and imports the occupation of land by the possessor with the intent to possess the land as his own." However, the Gates case was not an easement case; but involved a claim of title to an entire city lot. We held the evidence showed exclusive and hostile possession of the whole lot under claim of ownership for more than the statutory period. Likewise Fiorella v. Jones, Mo.Sup., 259 S.W. 782, and Burnside v. Doolittle, 324 Mo. 722, 24 S.W.2d 1011, from which defendant

quotes, are not easement cases. It is said: "[T]he principal difference being in the character of the claim and use" in easement cases. Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, 29. The claimant of an easement only claims a right to make a certain use of land and does not claim to possess the whole title and exclude the owner from it for all purposes.

The American Law Institute Restatement of the Law of Property, Sec. 457, states: "An easement is created by such use of land, for the period of prescription, as would be privileged if an easement existed, provided the use is (a) adverse, and (b) for the period of prescription, continuous and uninterrupted." The Restatement in Sec. 458 thus states the requirement of adverse use: "A use of land is adverse to the owner of an interest in land which is or may become possessory when it is (a) not made in subordination to him, and (b) wrongful, or may be made by him wrongful, as to him, and (c) open and notorious." As to this it is stated in 3 Powell on Real Property 445, Sec. 413: "The satisfaction of the above stated prerequisites for 'adversity,' namely, that the user has been not made in subordination to the rights of the claimed servient owner, but, rather, has been made under claim of right is commonly inferred, rather than directly proved. Thus proof that a particular use of another's land has in fact occurred normally justifies, in most states, a finding that the use has been adverse until this presumption is challenged by rebutting evidence." A recent Missouri case is cited in support, namely, Mueller v. Larison, Mo.Sup., 355 S.W.2d 5. See also Dalton v. Johnson, Mo.Sup., 320 S.W.2d 569, 573. Defendant's own testimony, hereinabove set out, would warrant a finding that plaintiff's use of this roadway was not in subordination to defendant because plaintiff's use began long before defendant became the owner of the land and, although such use was known to defendant when he bought the land, he neither said anything about it nor made any objection to it until

1954, when he decided it would be more convenient to him to plow over it. We consider that plaintiff's evidence made a prima facie case which the court properly could decide was not overcome by defendant's evidence.

■ Defendant arguing the use was permissive and not under a claim of right says that when plaintiff's use began in 1919 the land now owned by defendant was in prairie grass, unenclosed, not farmed by the owner and that anyone could cross it at any point. Defendant says the land was not plowed to the drainage ditch until 1937 or 1938 and that all of it was not plowed until defendant became the owner. Defendant's position seems to be that plaintiff's use of the way could not have been adverse when part of the land was swampy, in prairie grass and not farmed or plowed by the owner and that, when defendant began to farm it, plaintiff had to do something more than continue the use he had been making to give defendant knowledge that his use was adverse to defendant's title, citing Hynds v. Hynds, 274 Mo. 123, 202 S.W. 387, 389, saying: "The burden is on a defendant claiming by adverse possession to fix the time when he began to hold adversely to the true title." However, this involved the claim of one cotenant against the others, an entirely different matter. Plaintiff also cites such cases as Burnett v. Sladek, Mo.App., 251 S.W.2d 397, discussing ways used through unenclosed lands, especially woodland, only occasionally used and not always by the same route; and George v. Crosno, Mo. App., 254 S.W.2d 30, where the owner kept gates across the way which were opened and shut by users. Even though some of this land was swampy, nevertheless the ground along the drainage ditch appears to have always been a good place for a road and that was its location throughout the entire period. There were visible markings of the roadway and plaintiff worked it "with the blade on the back of a Ford tractor." Moreover, plaintiff used this way for the statutory period after the land owned by

defendant was being cultivated. Furthermore, defendant's land was not unsettled territory being only about one mile from the town of Dawn and on its west line was the county road between Dawn and Utica. See Schroer v. Brooks, 204 Mo.App. 567, 583, 224 S.W. 53.

Defendant also points to plaintiff's negotiations for purchase and his lawyer's suggestion that he could establish a private road by legal proceedings. However, these were in connection with efforts to compromise the controversy which arose in 1954 when defendant attempted to stop plaintiff's use of the way and the trial court reasonably could and apparently did consider them only on that basis.

■ Defendant further argues that plaintiff's possession of the way was not exclusive pointing out that defendant himself used it and that the evidence showed others owning or farming land beyond plaintiff's land used it. We know of no case holding that to obtain an easement of right of way the user must prevent the owner of the land from using it and defendant cites none. On the contrary, it is said: "The adverse user must be exclusive in the sense that the right does not depend for its enjoyment on similar rights in others. * * * The use may be exclusive in the required sense even though it is participated in by the owner of the servient tenement, or by owners of adjoining land." 28 C.J.S. Easements § 15, p. 658; see also 17A Am.Jur. 698, Easements, Sec. 82. In an Annotation, 111 A.L.R. 223, the rule is thus stated: "The requirement of 'exclusive,' as regards acquirement of an easement of way by prescription, does not mean that the claimant shall have been the sole user, or the only one who could or might enjoy the same or a similar right over the same land, but simply that the individual right shall not depend for its enjoyment upon a similar right in others, being, by virtue of some distinction of its own, independent of all others." In this case, the fact the way

was used by some persons to get to and from land beyond plaintiff's land would indicate that use by them was with plaintiff's permission because they crossed his land to use it. In Anson v. Tietze, 354 Mo. 552, 190 S.W.2d 193, cited by defendant, it is said of the claimants therein (190 S.W.2d 1. c. 199): "They claimed no right in themselves that was not subordinate to the rights of the public." Obviously that did not meet the requirement of exclusive user.

In Sanford v. Kern, 223 Mo. 616, 628, 122 S.W. 1051, 1055, cited in the A.L.R. Annotation, we said: "That the neighbors used this open lane when they liked in no way impairs his possession of right. Such acquiescence on his part did not destroy his easement. Such use is usual, and is recognized by our statute, in ways of necessity. Rev.St.1899, § 9468. The possession Sanford took and held was not the possession a proprietor would take and hold of his meadow, cornfield, or dooryard, but it was the possession usually taken of an open lane, cut off on both sides by fences, bridged where necessary, kept fit for use by annual repairs, and used continuously by him, his tenants, and those having business on his land as his means of egress and ingress—his market road. It was the best possession the subject-matter was susceptible of. The user was confessedly open, notorious, continuous, and without a word said or finger lifted in antagonism to it until defendant, after the flight of 14 years, built a fence across the lane and visibly asserted a hostile right to the strip."

We have a similar view as to this case; although this way was not fenced it was in a well defined location, continuously used by plaintiff as his means of ingress and egress from 1919 to 1954 "without a word said or a finger lifted in antagonism to it" until defendant after having seen plaintiff use it over this period (and from 1941 to 1954 while defendant was farming the land) asserted a hostile

right to plow this roadway and prevent plaintiff from using it. Our conclusion is that the evidence warranted a finding of an easement by prescription in plaintiff to this roadway and that the court reached the correct result in ruling plaintiff had an easement for ingress and egress to his land over this roadway.

The judgment is affirmed.

All concur.