**Glen W. JOHNSON and Mabel Johnson, Plaintiffs-Appellants,**

v.

**William J. ROBERTS and Mrs. William J. Roberts et al., Defendants-Respondents.**

No. 9932.

Missouri Court of Appeals, Springfield District.

Jan. 12, 1976.

Rehearing denied Feb. 5, 1976.

Kenneth W. Johnson, Johnson & Sweeney, Springfield, for plaintiffs-appellants.

Arthur S. Haseltine, Haseltine & Haseltine, Springfield, for defendants-respondents.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

BILLINGS, Chief Judge.

"Good fences make good neighbors" penned the poet,[1] but a boundary fence erected before the turn of the century gave rise to this suit between kinsmen. Plaintiffs claimed title to a strip of land by adverse possession and sought injunctive relief against the defendants. Trial to the court resulted in plaintiffs' claims being denied and judgment being entered in favor of the defendants. We reverse the judgment and remand the case for entry of judgment quieting the title to the disputed strip in the plaintiffs and granting them the requested equitable relief.

Plaintiffs and defendants are the owners of adjoining farms in Greene County. Plaintiffs are the record owners of the north half and the defendants are the record owners of the south half of the southwest quarter of the southeast quarter of Section 23, Township 21, Range 21.

---

1. Robert Frost, *Mending Wall* (1914).

The common source of title to both tracts of land was William Roberts, grandfather of plaintiff Mabel Moses Johnson and defendant William J. Roberts. The fence was constructed prior to 1896. That year, following the intestate death of William Roberts, a partition suit resulted in the north tract being set off to Mabel's mother, Carrie, and the south tract being set off to William J.'s uncle, Charles.[2] Defendants acquired title to the south tract from Charles Roberts in 1939. In 1963 the plaintiffs purchased the north tract from the administratrix of the estate of Carrie Moses.

The evidence was undisputed that the fence was considered to be the southern boundary of the Moses farm (north tract) and plaintiffs had always claimed to own to the fence. During the ownership of Carrie Moses a barn was located near the fence on the strip of ground and cattle were pastured within the fenced confines of the Moses farm. A portion of the strip was also used by the Moses for a garden spot. After plaintiffs purchased the farm the barn was torn down; and a portion of the strip was used by plaintiffs' tenant for a garden spot and the remainder was pastured.

The defendants acknowledged they had never farmed or pastured their cattle on the north side of the fence. They caused repairs to be made to the fence in order to keep their livestock on the south side of the fence and never made any claim to any property lying north of the fence.

More than ten years after the plaintiffs purchased and took possession of the lands north of the fence, they caused a survey of the property to be made. The survey revealed the fence to be south of the dividing line between the north half and the south half of the southwest quarter of the southeast quarter. At the west boundary of the tracts the fence was eight feet south of the line, and at the east boundary it was twenty-nine feet south of the line. Several months later the defendants began erecting a new fence along the surveyed line, and this litigation followed.

Our review of this non-jury case is upon the law and the evidence as in suits of an equitable nature, and although we defer to the findings of the trial court where the matter of credibility of witnesses is involved, we need not do so where a disputed question is not a matter of direct contradiction by different witnesses. Rule 73.01, V.A.M.R.; *Slentz v. Cherokee Enterprises, Inc.,* 529 S.W.2d 495 (Mo.App.1975). Further, if the lower court's judgment is erroneous we must render such judgment as the court ought to give. Rule 84.14, V.A.M.R.; *Smith v. Thomas,* 520 S.W.2d 132 (Mo.App. 1975).

The trial court made findings of fact and conclusions of law in entering judgment for the defendant. We have carefully examined the court's findings and deem them to be without competent evidentiary support. Plaintiffs carried their burden of proving adverse possession of the disputed strip. Their possession was hostile and under a claim of right. Possession was actual, open, notorious, exclusive and continuous for more than the ten-year statutory period [§ 516.010, RSMo 1969].

The Moses farm was fenced, and the plaintiffs always claimed and intended to own the farm to what was commonly known as the boundary fence separating the north and south tracts. The boundary fence had long been recognized by the parties and the community as being the property line between the two acreages. The disputed strip was gardened and pastured as a part of the Moses farm by plaintiffs and their tenant. Plaintiffs' predecessor in title made similar use of the north tract all the way to the fence for many years before plaintiffs purchased the farm. The defendants, although aware the fence did not follow a true east and west line, never at any

---

**2.** The partition decree described each tract by government subdivision and as "containing 20 acres *more or less.*" (emphasis added)

time claimed to own any property north of the fence and repaired the fence in order to keep their livestock on the south side of it.

The evidence adduced by the plaintiffs shifted to the defendants the burden of going forward on the issue of adverse possession. *Slentz v. Cherokee Enterprises, Inc.,* supra. Defendants failed to sustain this burden. Contrary to the court's findings, there was no competent evidence that: (1) Grandfather Roberts erected the fence; (2) the fence was erected for convenience; (3) the partition suit gave Carrie and Charles tracts of equal acreage; (4) both tracts had been farmed by Charles' father for the benefit of Carrie and Charles; or, (5) the possession of the strip throughout the years by the Moseses and plaintiffs was permissive.

In *Slentz v. Cherokee Enterprises, Inc.,* supra, this court recently had occasion to review in detail the authorities and law applicable to a claim of adverse possession arising from a boundary fence being located on other than the true property line. The authorities set forth in *Slentz* are controlling in this case and govern its disposition.

"In determining the character of the possession, the important factor is, not whether the true line is known or whether there is a mistake as to the boundary, since the location of a fence beyond the true boundary line is usually due to mistake, but it is the intent with which the boundary fence is built and the unequivocal character of the claim made thereafter, which is decisive of the question. . . . In short, the determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line." *Bell v. Barrett,* 76 S.W.2d 394, 396–97[3] (Mo.1934).

The judgment is reversed, and the case remanded with directions that the title to the strip be quieted in the plaintiffs and they be granted the equitable relief against the defendants.

All concur.