Eugene PORTER and Grace Porter, Respondents,

v.

Donald E. POSEY and Edna Posey, Appellants.

No. 40203.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 4, 1979.

Summers & Compton by Ronald N. Compton, Clayton, for appellants.

Politte & Thayer, Sidney A. Thayer, Jr., Washington, for respondents.

SATZ, Judge.

Defendants, who held record title to .18 acres of land located in Franklin County, Missouri, appeal from a judgment which quieted title to this land in plaintiffs. We affirm.

Defendants, Donald E. Posey and Edna Posey, purchased land from an Elsie Mae Kapp in October, 1975. The .18 acres in dispute lies within the property described in the deed conveying Ms. Kapp's property to defendants. Ms. Kapp had obtained title to her property as an inheritance from the estate of Ola Everson, and Ms. Kapp held the land only briefly before selling it to defendants. There is no indication how long Ms. Everson held the property.

In July, 1976, about 9 months after defendants had purchased their property, plaintiffs, Eugene Porter and Grace Porter, purchased land which adjoined and bordered defendants' land on the east and south. Plaintiffs purchased their property from the Engelmeyers, the parents of plaintiff Grace Porter. The deed from the Engelmeyers to plaintiffs described property which the Engelmeyers had acquired in

three parcels, in a period between June, 1955, and January, 1956, but this deed did not contain a description of the disputed .18 acres.

For clarity, we set out a sketch of all these parcels of land, in particular, the .18 acres of land in dispute.

Soon after the Engelmeyers had acquired the noted three parcels of land, they proceeded to clear the tract in dispute with a bulldozer and, as reflected in the sketch, they built and graveled a turnaround roadway on this tract. The Engelmeyers maintained and used the turnaround and the land surrounding it until 1976, when they transferred their property to plaintiffs. The Engelmeyers used the area immediately adjacent to the turnaround as a means of access to their property and, also, as a site for volleyball games and overflow parking. The Engelmeyers believed they owned the turnaround and the land upon which it was built.

During the Engelmeyers' tenure on the tract in question, motorists occasionally used the turnaround to go back onto the highway. However, there is no evidence that defendants' predecessors in title used this land in any way. Moreover, the record is silent as to who paid the taxes on the .18 acre tract prior to 1976, when defendants began paying these taxes. Mrs. Engelmeyer believed all along that their tax assessment included the .18 acre tract in question.

Sometime prior to their purchase of land from the Everson estate in October, 1975, defendants had this property surveyed and discovered the turnaround was within the property lines described in their deed. Sometime later, apparently in the summer of 1976, although the time was not clearly established at trial, the father of defendant Donald Posey threatened Mr. Engelmeyer with a shotgun and told him to get off the land in dispute. Whether this threat or other facts led plaintiffs to discover the tract in dispute was not within the land described in the Engelmeyers' deed, plaintiffs did discover this omission just prior to their purchase of the land from the Engelmeyers. Plaintiff Eugene Porter sought the advice of an attorney, who assured him that this omission in the Engelmeyers' deed would have no bearing on the transfer. Thus, according to plaintiff Eugene Porter, at the time he and his wife purchased the Engelmeyers' land in July, 1976, he was aware that the .18 acres in question was not described in the deed, but he did believe it was a part of the land he was purchasing. In addition, according to Mrs. Engelmeyer, the Engelmeyers believed they owned the .18 acres and they intended to transfer all the land they owned to plaintiffs.

By deed, dated July 6, 1976, the Engelmeyers conveyed their property to plaintiffs but, as noted, this deed did not contain a description of the tract in dispute. Shortly thereafter, on July 18, 1976, defendant Donald Posey confronted plaintiffs, informed them he owned the tract in question and told them to stay off of his property. Plaintiffs disputed defendants' claim and indicated that they "were going to Court on adverse possession"; and the record shows, by explicit testimony and by inference, that plaintiffs continued to maintain and use the tract in dispute just as the Engelmeyers did. Subsequently, on September 4, 1976, defendant Donald Posey installed a cable blocking access to the turnaround, which precipitated the initiation of the present action.

In Count I of their petition, plaintiffs requested the trial court to require defend-

ants "to set forth their . . . claims" so that all of "defendants' claims may be determined" and, also, sought a declaration that plaintiffs were "owners" of the disputed tract and that defendants had no "estate or interest" in this tract. Alternatively, in Count II, plaintiffs sought an easement to the turnaround roadway. The court vested title to the .18 acre tract in plaintiffs and rendered Count II moot.

To understand defendants' specific arguments on appeal from this judgment, the explicit bases of plaintiffs' claim of title must first be considered.

As noted, in Count I of their petition, plaintiffs chose to establish their title by naming defendants as parties claiming title to the tract in dispute and seeking a declaration of title to this tract in plaintiffs and not in defendants. Although not styled or designated as such, plaintiffs' action is, in effect, a suit to quiet title as contemplated by § 527.150 RSMo 1969 and Rule 93.01, and we shall treat it as such. *Wallis v. St. Louis Cty.*, 563 S.W.2d 93, 95 (Mo.App.1978).

■ Normally, in a suit to quiet title, we must ascertain and determine the rights of the parties, grant such relief as may be proper and determine which party has "better" title, even though a title superior to the rights of either party may be held by a stranger. *Gaskill v. Cook*, 315 S.W.2d 747, 754 (Mo.1958); *Johnson v. McAboy*, 350 Mo. 1086, 169 S.W.2d 932, 934 (1943). However, the principles of law normally used in quiet title actions are not necessarily relevant

and applicable here.[1] Plaintiffs' claim of title, as reflected in their pleadings, their trial record and their argument on appeal, is that the Engelmeyers acquired title by adverse possession and, that under Missouri law, the Engelmeyers may and did transfer their title to the disputed tract without a written conveyance describing the tract. According to plaintiffs, this transfer was accomplished simply by the intention of the Engelmeyers to transfer the title so acquired to plaintiffs and by plaintiffs receiving or taking possession of the land from the Engelmeyers.[2]

In response to plaintiffs' claim, defendants contend that (1) the Engelmeyers did not acquire title to the .18 acre tract by adverse possession and (2) that even if the Engelmeyers did so acquire title, they did not transfer their "rights" or title so acquired to the plaintiffs. We do not agree with defendants.

■■ This was a court-tried case and, thus, the judgment of the trial court must be sustained unless there exists no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). In addition, where, as here, no findings of fact or conclusions of law were requested or given, all issues are to be deemed found in accordance with the results reached, and the judgment is to be affirmed under any reasonable theory presented by the evidence. *E. g., S. G.*

1. We stated some of these principles in *Moise v. Robinson*, 533 S.W.2d 234, 240 (Mo.App. 1975) as: "Where each party to a quiet title action is claiming title against the other, the burden of proof is upon the respective parties to prove better title than the other. . . . Plaintiffs are not required to show a title good against the whole world, but only a title superior to the defendant's. . . . The question is which has the better title. A claimant must prevail on the strength of his own title and not upon any weakness in the title of the other claimant. . . . [citations omitted]."

2. In so restricting their claim, plaintiffs have restricted the record so that it neither explicitly

nor inferentially supports other theories which may have been used to establish title in plaintiffs better than defendants' title. Perhaps plaintiffs limited themselves to their expressed theory because of the results reached in *Lurvey v. Burrell*, 317 S.W.2d 458 (Mo.1958). Although apparently not raised as an issue in that quiet title action, plaintiffs there, like plaintiffs here, were in possession of the tract in dispute, but they failed to prevail over defendants there who, like defendants here, held "paper" title, which had been extinguished by a prior adverse possessor of the land in dispute.

*Adams Printing v. Central Hardware Co.,* 572 S.W.2d 625, 627–628 (Mo.App.1978). Further, this court must accept as true all evidence and permissible inferences favorable to the prevailing party and disregard any contradictory testimony. *Id* at 628. Under these guidelines, there was sufficient evidence for the trial court to find the Engelmeyers had acquired title to the tract in dispute by adverse possession. Furthermore, our interpretation of applicable Missouri law is no different than plaintiffs', and we find the peculiar principle for transferring title, urged by plaintiffs, is embodied in our case law. On the present record, there was sufficient evidence for the trial court to apply and follow this principle.

Limited by the record to plaintiffs' theory, the crucial questions in this case are: (1) was title to the tract in dispute vested in the Engelmeyers; (2) if so, was their title subsequently extinguished or divested; and (3) if not divested or extinguished, was their title properly transferred to plaintiffs.

In order for the trial court to have vested title in plaintiffs on the present record, it must have found that title first vested in the Engelmeyers by adverse possession. Thus, implicit in the court's ultimate decision is a finding that the Engelmeyers occupied the tract in dispute intending to possess it as their own, or, more specifically, that the Engelmeyers occupied or used the tract and their occupation or use of the tract was (1) actual (2) open and notorious (3) hostile (4) exclusive and (5) continuous for ten years. *E. g., Beldner v. General Electric Company,* 451 S.W.2d 65, 67–68 (Mo.1970). Defendants limit their attack on these implicit findings to an attack on the open and notorious, hostile and exclusive elements of the Engelmeyers' adverse possession.

■ Open and notorious occupancy or possession is an essential element of adverse possession because the openness and notoriety of the occupancy or possession gives the owner cause to know that an adverse claim of ownership is being made by another. *Anson v. Tietze,* 354 Mo. 552, 190 S.W.2d 193, 199 (Mo.1945). The determination of openness and notoriety centers on whether the particular acts in question are acts of ownership and are sufficient to give the existing owner notice of the claim being made. *See Sanderson v. McManus,* 252 S.W.2d 351, 356 (Mo.1952). Thus, the element of open and notorious is satisfied by a showing that the occupancy or possession manifested a claim of ownership and was conspicuous, widely recognized and commonly known. *Long v. Lackawanna Coal & Iron Co.,* 233 Mo. 713, 136 S.W. 673, 681 (1911).

■ In the instant case, the Engelmeyers entered the disputed tract with a bulldozer, cleared the land, built the turnaround, then maintained it and the land surrounding it. The family also played volleyball and parked on this land. In addition, a neighbor testified that he believed the Engelmeyers to be the owners of this tract of land because they were the only ones who maintained it and used it with any regularity for a period of 18 years. Changing the physical structure of the land by clearing it, building a turnaround and then using and maintaining the turnaround and the land surrounding the turnaround was sufficient evidence to support the court's finding that the Engelmeyers' acts were acts of ownership, sufficient to give the then existing owner notice of this claim and were commonly known so as to constitute open and notorious occupancy or possession. *Anson v. Tietze, supra.*

Defendants argue that the playing of volleyball and the parking of cars on the land in question were so "friendly in character" that these acts failed to give the then existing owner—defendants' predecessors in title—notice of a claim of ownership. Defendants, however, conveniently omit the fact that the parking of cars and playing of volleyball were not isolated acts or incidents but were combined with the noted clearing of the land, the building of the turnaround

and the continuous use and maintenance of this turnaround and its surrounding land.

▮ Defendants also cite *Brown v. Evans*, 182 S.W.2d 580, 583 (Mo.1944) and argue that the clearing of the land is not a sufficient act to support a claim of adverse possession. Again, defendants conveniently fail to note that in the *Evans* case the land cleared was not the land claimed by adverse possession. Furthermore, the clearing of land is a sufficient act for the purposes of adverse possession when, as here, the clearing is combined with other acts adverse to another's ownership. *Miller v. Warner*, 433 S.W.2d 259, 264 (Mo.1968). On this record, we cannot say there was not sufficient evidence to establish an open and notorious claim.

▮ Defendants next argue that the Engelmeyers' use and possession was not hostile. Hostility of possession does not imply ill will or acrimony. Moreover, to prove hostility, an expressed declaration of hostility need not be made. Hostile possession is simply an assertion of ownership adverse to that of the true owner and all others; i. e., "the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another". *Teson v. Vasquez*, 561 S.W.2d 119, 127 (Mo.App.1977). Thus, as with other elements of adverse possession, the element of hostility is founded upon the intent with which the claimant held possession and, since the elements of adverse possession are not mutually exclusive, acts which are open and notorious, supporting a claim of ownership, may and often do logically satisfy the element that the claim be hostile. *See Miller v. Warner*, supra at 263–264; *Patterson v. Wilmont*, 245 S.W.2d 116, 122 (Mo.1952).

▮ In the present case, as we have previously noted, there was sufficient evidence for the trial court to find that the Engelmeyers, occupied and used the disputed tract with the intent to possess it as their own and, thus, clearly their use and occupancy was hostile. In addition, we note that defendants failed to adduce any evidence to support a conclusion that the Engelmeyers' use of this tract was permissive. *See Benson v. Fekete*, 424 S.W.2d 729, 739 (Mo.banc 1968). Defendants do cite *Carpenter—Union Hills Cemetery v. Camp Zoe, Inc.*, 547 S.W.2d 196 (Mo.App.1977) to argue that the Engelmeyers' use of the disputed tract was not hostile but, rather, was a result of the neighborly accommodation of defendants' predecessors in title who acquiesced in this use simply because the tract was rural, wild and unenclosed. The *Camp Zoe* case is not in point, because the land in issue there was "sufficiently developed" and, thus, the "'wild land' exception [did] not come into play". *Id* at 203. Likewise, in the present case, the tract was developed sufficiently to make the "wild land" exception irrelevant.

▮ Defendants' next attack on adverse possession is that the Engelmeyers' possession was not exclusive because others occasionally used the turnaround and, thus, defendants contend, plaintiffs' evidence, at best, merely established a common easement by prescription. This argument ignores the fact that the element of exclusivity is also required to establish an easement by prescription, *Cramer v. Jenkins*, 399 S.W.2d 15, 17–19 (Mo.1966); and, therefore, if there were exclusive use to satisfy that element for a prescriptive easement, arguably that use would satisfy the element of exclusive use required by adverse possession.

▮ Be that as it may, possession or use is exclusive when the claimant occupies or uses the land for his own use and not for that of another. *Gates v. Roberts*, 350 S.W.2d 729, 732 (Mo.1961). *See also Cramer v. Jenkins*, supra at 18. The present record reveals that the Engelmeyers built the turnaround believing it to be on their property. The fact that travelers occasionally also used this roadway to turn around does

not imply nor indicate that the Engelmeyers occupied the land for the benefit of these travelers. Indeed, even occasional use of disputed property by the record owner will not of itself negate the exclusive use by an adverse claimant, if the record owner's knowledge or notice of the adverse claim is not otherwise altered. *See Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974). For these reasons, defendants' argument against exclusivity is not persuasive.

Having considered defendants' argument in the light of the entire record, we cannot say that the trial court's judgment was clearly erroneous and, thus, even if our judgment would be different, we could not substitute our judgment for the trial court's judgment. *Murphy v. Carron, supra; Johnson v. Roberts,* 532 S.W.2d 530, 532 (Mo. App.1976). There was sufficient evidence for the trial court to find that the Engelmeyers' occupancy and use of the tract in dispute satisfied the elements of adverse possession.

■ These elements having been satisfied, the Engelmeyers' adverse possession extinguished the title to the tract held by defendants' predecessors in title and vested independent title to the tract in the Engelmeyers. *See Moore v. Hoffman,* 327 Mo. 852, 39 S.W.2d 339, 343 (1931); *Russell v. Russell,* 540 S.W.2d 626, 631 (Mo.App.1976). This title could only be divested in the same manner as other title. *E. g., Hamburg Realty Co. v. Walker,* 327 S.W.2d 155, 159 (Mo.1959). There is no evidence that the Engelmeyers transferred their title to someone other than plaintiffs, nor is there any evidence that defendants or their predecessors in title reacquired ownership of the disputed tract by adverse possession. *See Klaar v. Lemperis,* 303 S.W.2d 55, 58 (Mo.1957).

The remaining question, then, is whether the Engelmeyers properly transferred title to plaintiffs. As noted, the principle urged by plaintiffs to support the Engelmeyers' transfer of title to plaintiffs, in effect, per-

mits title to property acquired by adverse possession to be transferred without a written conveyance, and simply requires the title owner to intend to transfer the property so acquired and the transferee to receive or take possession of that property. In addition, this principle implicitly permits a person acquiring title by adverse possession to convey it to another without having title quieted in him prior to the conveyance; and it also permits an oral conveyance of title which seemingly violates the requirement that land may only be conveyed by a written instrument. *See* § 442.020 RSMo 1969 and cases interpreting same. Moreover, facially, the principle parallels and is similar to the doctrine of "tacking" which permits an adverse possessor, in possession of land for less than the prescriptive period, to add his period of possession to that of a prior adverse possessor in order to establish a continuous possession for the requisite prescriptive period. *Moran v. Roaring River Development Co.,* 461 S.W.2d 822, 831–832 (Mo.1970); 3 Am.Jur.2d § 58, p. 146.

Defendants do not directly attack the validity or propriety of this principle. Rather, as we understand defendants' argument, they argue the principle is inapplicable here because the Engelmeyers' intent to transfer ownership or title to the disputed tract could only support a valid conveyance of that ownership or title if, but only if, the Engelmeyers and plaintiffs did not recognize that another party, the defendants, owned a deed describing the tract; i. e., the Engelmeyers' and plaintiffs' recognition of record title in defendants precluded plaintiffs, in defendants' language, from "tacking" their possession to the Engelmeyers' possession. We do not agree.

Our Supreme Court's decision in *Auldridge v. Spraggin,* 349 Mo. 858, 163 S.W.2d 1042 (1942), appears to be the genesis of the peculiar principle urged by plaintiffs. In *Spraggin,* a suit to quiet title, defendants had previously been successful in an ejectment suit against plaintiffs' predecessor in title. Nonetheless, the Court quieted title

in plaintiffs. In reaching their decision, the Court first noted that plaintiffs' predecessor had acquired title by adverse possession long before the ejectment action and, thus, the ejectment had no effect on that title. Since title "had been established" in plaintiffs' predecessor by adverse possession, the doctrine of tacking would not be relevant to the issues then before the Court. However, in apparent support of its decision quieting title in plaintiffs, the Court used the doctrine normally used to permit tacking by stating: L.C.1045

> "The rule appears to be where land adversely held is included in the same enclosure with land owned and conveyed by the grantor, the taking of possession by the grantee of the entire enclosed area creates privity with the grantor as to the portion not conveyed. . . . Thus, the possession of such a grantor becomes tacked to that of his grantee."

Viewing the *Spraggin* case in the described posture, the Court's decision could be construed as holding that title to property acquired by adverse possession may be transferred by a deed which did not contain a description of that property, under a doctrine normally used for tacking periods of adverse possession.

This interpretation of *Spraggin* received implicit approval in the subsequent case of *Lurvey v. Burrell,* 317 S.W.2d 458 (Mo. 1958). In *Burrell,* defendants held what the Court called "paper" title to a 10 foot tract of land in dispute. Plaintiffs claimed title to this land by a quit claim deed from a Mr. Gillenwaters and Gillenwaters claimed title from his predecessors, the Drummonds. Conceding that the Drummonds' predecessors in title may have acquired title to the tract in dispute by adverse possession, and, also, that the Drummonds may have acquired this title, the Court still reversed the trial court's judgment which had quieted title in plaintiffs. The Court held that the Drummonds did not convey their title to Gillenwaters and, thus, Gillenwaters had no interest to convey to plaintiffs by his quit claim deed.

The determinative fact would have appeared to be that the deed from the Drummonds to Gillenwaters did not describe the tract in dispute, and, thus, this omission would be a fatal break in plaintiffs' chain of title. However, rather than limiting the basis of its holding to the omission of the tract in dispute from the Drummonds' deed, the Court appeared to justify its decision on other or additional grounds. Thus, two rules normally used for tacking possessions within the statutory period appeared to be relevant to the Court when it stated: L.C. 461

> "It is a well established rule of law that there must be a conveyance of property claimed by adverse possession by some act (by gift or otherwise) in order to effectuate a transfer of such property from the adverse holder to the grantee. Absent this, there can be and there is no transfer to the grantee of any right acquired by the grantor."

.    .    .    .    .

> "It has also been ruled that a conveyance by deed does not convey land held by adverse possession, not included in the deed, unless there is evidence or some circumstances showing that it was intended to be included."

More important, the Court emphasized its belief in the relevancy of these rules and, also, emphasized the determinative importance of the intention of the transferror in transferring title acquired by adverse possession without a written conveyance by stating that the Drummonds "knowingly did not include the disputed area" in their conveyance and that "[f]urthermore, one of [the Drummonds] . . . testified that it was not intended that the land in dispute be conveyed". *Id* at 461–462.

Arguably, taken in total context, the noted rules and statements are mere dicta. Nonetheless, the Court subsequently interpreted the use of these rules and statements as defining an approved method of transferring title acquired by adverse possession,

and the Court applied that method as a principal of law in *Crane v. Loy,* 436 S.W.2d 739 (Mo.1968).

In the *Crane* case, plaintiffs held record title to the property in dispute and brought a quiet title action against defendants who claimed title through their grantor, a Mr. John. The majority found title to the disputed tract had been vested in defendants' "predecessors", prior to Mr. John, without designating which of the several predecessors had so acquired title. However, the implication was that an Ellen Selby, the immediate predecessor in title to Mr. John, had acquired title by adverse possession.[3] The heirs of Ellen Selby transferred certain described property by a written deed to Mr. John but did not include a description of the disputed tract in that deed. Since the Court had found that title to the disputed tract had already been vested by adverse possession prior to the transfer to Mr. John, the Court specifically noted that the doctrine of tacking was not relevant to the issues before it. Nevertheless, the Court believed some of the principles comprising the doctrine of tacking were relevant to the issues before it when it defined those issues to be: L.C. 743–744

> " . . . whether [the Selby heirs] transferred [their] title and occupancy to Mr. John and the [defendants]. And that again as with adverse possession itself is a question of intention. . . . *The point at issue is the intended and actual transfer of possession of the land held adversely.*" (Emphasis theirs).

Finding that the Selby heirs intended to transfer the disputed tract to Mr. John and that Mr. John likewise intended to transfer the tract to defendants, and, further, finding that Mr. John and, then, in turn, defendants took actual possession of the disputed tract, the Court quieted title in defendants. Thus, it is quite clear that the peculiar principle urged by plaintiffs is embodied in our law, and we are constrained to follow it.

■ In the present case, Mrs. Engelmeyers' unrefuted testimony was that she and her husband intended to convey the disputed tract to plaintiffs. Moreover, this was plaintiffs' understanding, and the fact that plaintiff Eugene Porter sought legal advice to carry out that intention merely enforces the weight to be given to Mrs. Engelmeyers' testimony. Further, there was sufficient explicit testimony and inferential evidence for the trial court to find that, after the transfer, plaintiffs took possession of the disputed tract.[4] Thus, the Engelmeyers transferred their title to the disputed tract to plaintiffs. *Crane v. Loy, supra; Counts v. Moody,* 571 S.W. 134, 139–140 (Mo.App.1978); *Ott v. Hoffmeier,* 528 S.W.2d 166, 168 (Mo.App.1975). *See also Johnson County Post No. 2513 V.F.W., Inc. v. Jackson,* 519 S.W.2d 335, 338 (Mo.App. 1975).

■ Defendants rely on *Riebold v. Smith,* 150 S.W.2d 599 (Mo.App.1941) for their contention that the Engelmeyers' and plaintiffs' acknowledgment of record title in another, in effect, was recognition of superior title in another and that this recognition precluded plaintiffs' "right to tack". Defendants' reliance on the *Smith* case is misplaced. In that case, the claimants were leaving on a trip and, for the purpose of placing record title in their daughter, they executed deeds to her describing all their property, except they failed to describe certain parcels of property which, subsequently, at trial, they claimed by adverse possession. Construing this failure by claimants

---

3. This was the interpretation also made by Judge Finch in his concurring opinion. *Crane v. Loy, supra* at 747.

4. In their brief, defendants tacitly concede plaintiffs' possession. In any event, neither defendant Posey's installation of the cable

blocking the turnaround, an apparent trespass, nor his father's threat, from the record, a criminal act, would oust plaintiffs from their possession, which, under the guidelines of *Murphy v. Carron, supra,* was sufficiently shown by the record.

to be recognition of superior title in another during the statutory period required for adverse possession, the court inferred the claimants did not intend to possess the parcels in dispute as their own, but, rather, held them in subservience to a recognized, superior title in another. Thus, the court held the asserted claim could not have been "hostile" for the full statutory period and title could not have vested in claimants by adverse possession. These facts clearly distinguish *Smith* from the present case. Here plaintiffs are not claiming title by tacking their possession on to their predecessors' possession to establish the proper cumulative period of adverse possession. Rather, as noted, plaintiffs claim title was acquired by their predecessors, the Engelmeyers, who subsequently transferred title to plaintiffs. Moreover, in the present case, there was no need for the court to determine either the Engelmeyers' or plaintiffs' intent by inference. Their intent was explicitly stated and unrefuted. The Engelmeyers intended to convey the tract in dispute and plaintiffs intended to receive it. Admittedly, upon learning of defendants' claim of ownership, plaintiffs sought the advice of an attorney to determine how the disputed tract should be transferred. Without commenting on the validity or propriety of that attorney's advice, plaintiffs' request was based upon a belief that the Engelmeyers owned the disputed tract, and, as noted, the Engelmeyers' belief was no different. Plaintiffs' request for legal advice sensibly followed from their explicitly stated belief that the Engelmeyers owned the tract in dispute and, thus, in its worst light, plaintiffs' request was no more than an implicit acknowledgment of their explicitly stated belief. Sensibly construed, plaintiffs' request was merely an attempt on their part to settle the dispute without court action and, thus, their request would not extinguish the Engelmeyers' title nor divest them of that title and would not preclude them from transferring their title to plaintiffs. *Crane v. Loy, supra* at 745–747. *See Sanderson v. McManus,* 252 S.W.2d 351, 357 (Mo.1952).

The judgment of the trial court is affirmed.

DOWD, P. J., and CRIST, J., concur.