**Kenneth G. DORNER, and Bonnie J. Dorner, Plaintiffs/Appellants,**

v.

**Earl R. WISHON, and Esther G. Wishon, Defendants/Respondents.**

No. 58859.

Missouri Court of Appeals, Eastern District, Division Three.

May 21, 1991.

---

Frederick Macondray Steiger, Mertz, Stern & Frapolli, St. Louis, for plaintiffs/appellants.

Norman Perry Stricker, Potosi, for defendants/respondents.

REINHARD, Presiding Judge.

Plaintiffs appeal from a trial court order which dismissed their cause of action for ejectment and damages and ruled in favor of defendants' counterclaim for adverse possession. We affirm.

The real property which is the subject of this dispute is located in the "Somethin' Green" subdivision in Washington County. The subdivision was dedicated by the Oakland Development Corporation. William Rummel was the president. In 1972 Lot No. 45 was sold to Raymond Dunn who built a house on the lot in 1974. Defendants, Earl and Esther Wishon, purchased the house from Dunn in 1979 and received a warranty deed for lot 45. Mr. Wishon testified that Dunn had pointed out metal markers as the boundaries of lot 45. According to the testimony of plaintiffs' surveyor, however, these markers actually bisected lot 44 from the northwest corner of 44 and 45 to the southeastern corner of 44 and 45 and a portion of the dwelling encroached 12.51 feet upon lot 44. At the time defendants purchased the house and lot Mr. Dunn had planted fruit trees and grapevines on this section of lot 44. Marvin Riddle, whose property adjoins the subdivision and who had lived nearby since 1947, testified that he "broke the garden" and leveled Dunn's property in 1974 or 1975. The garden was located on lot 44. In addition, when he was asked if Dunn claimed the fruit trees he replied, "Yes. He told me not to plow them up into his orchard."

Plaintiffs, Kenneth Dorner and his mother Bonnie, received a deed to lots 43 and 44 from the same development corporation in 1982. Kenneth Dorner testified the property was overgrown at the time of the purchase. Bill Rummell showed him the corner markers when he sold him the property in 1982. It was Mr. Dorner's understanding that the line between these markers was the property line between 43 and 44 and at that time he believed defendants'

house was not on plaintiffs' land. He paid the taxes on lots 43 and 44 and exercised dominion over those lots with the exception of the part he thought was lot 45. According to his testimony he realized in 1984 that defendants' house encroached upon his property.[1] He approached the defendant and pointed out that part of defendants' house was on his property. He testified that defendant "told me his house was on my property; we needed to get it straightened out." (Defendants were not asked about any conversation with plaintiffs on this issue.)

Shortly after this conversation, however, defendant put in a satellite dish and a retaining wall on the disputed property. He continued to prune the fruit trees, collect fruit, and plow for a garden. In addition, they made improvements to the house, including the section on lot 44. Plaintiffs filed suit on March 6, 1986. Plaintiffs' petition contained two counts. In the first, they set out the setback requirements contained in the subdivision indenture of restrictions, alleged that defendants were in violation because of the encroachment of the house and asked for an injunction against defendants. In the second, they alleged that defendants' entry onto and use of their land had injured them and asked for damages and ejectment. Defendants answered and filed a counterclaim on April 28, 1986, in which they asserted their ownership of the disputed portion by virtue of adverse possession and asked the court to quiet title in them.

On April 15, 1990, the trial court held a hearing. No request was made for specific findings of fact or conclusions of law. The court held that defendants had obtained ownership of a triangular portion of lot 44 by adverse possession and specifically found that "the running of the ten (10) year statute was not tolled until suit was filed on March 6, 1986, in the Circuit Court of Washington County, Missouri." This appeal followed.

---

**1.** The record is not clear as to how plaintiffs made this discovery. The survey introduced by

Plaintiffs have briefed three points on appeal, each one of which presents a part of the question to be addressed. For the sake of clarity, we present the relevant issue in its entirety. Clearly the issue before us is whether the trial court erred in its decision that defendants had satisfied the requirements for adverse possession. Our review is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). In addition, credibility of the witnesses is for the trial court to determine and the court is not required to believe even uncontroverted testimony. Because the parties did not request findings of fact and conclusions of law, all fact issues are assumed as having been found in accordance with the result reached. *McAdams v. Lankford,* 751 S.W.2d 816, 818 (Mo.App.1988).

In order for the trial court to have reached its result in the present case it must have found that defendants had satisfied the five elements of adverse possession: 1) possession must be hostile and under a claim of right; 2) possession must be actual; 3) possession must be open and notorious; 4) possession must be exclusive; and 5) possession must be continuous for a period of ten years. *Curran v. Bowen,* 753 S.W.2d 940, 944 (Mo.App.1988).

Hostile possession does not imply ill will or acrimony. It is simply an assertion of ownership adverse to that of the true owner. "The claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized claim of another." [citations omitted] *Porter v. Posey,* 592 S.W.2d 844, 850 (Mo.App.1979). There was sufficient evidence for the trial court to find that the element of hostile possession had been met. The defendants at all times treated the land as their own. Even after plaintiffs informed them of the possibility that some portion of the property was being claimed by another, defendants added a satellite dish and continued to behave as if the land were theirs. That the possessor mistaken-

plaintiffs was conducted in 1990.

ly believed the land to be his does not defeat the element of hostility. *Metropolitan St. Louis Sewer District v. Holloran,* 756 S.W.2d 604 (Mo.App.1988).

Similarly, the evidence supports the finding that defendants had actual possession of the property. Actual possession requires an ability to control the area, physical possession, and an intent to exclude others. Plaintiffs have suggested that the acts of defendants were insufficient to prove actual possession. The evidence needed to show actual possession will vary from case to case depending upon the character of the land itself. *Ortmeyer v. Bruemmer,* 680 S.W.2d 384, 392 (Mo. App.1984). Here we note that defendants treated the property as if it were a part of their residential yard, as did the claimant in *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 160 (Mo.App.1979).

The next element to be considered is whether the possession was open and notorious. Nothing could be more open and notorious than the presence of a house on the property. Both defendants and their predecessor considered the property to be part of their yard. It is enough that visible and notorious acts were exercised over the premises. *Id.* Similarly, possession was exclusive because the evidence showed that defendants occupied and used the land for their own purposes and not for those of another. *Porter v. Posey,* 592 S.W.2d 844, 850 (Mo.App.1979).

The final requirement is that possession be continuous for a period of ten years. Plaintiffs assert that the conversation with defendants in 1984 was sufficient to toll the running of the statute and that plaintiffs "had exercised control over the majority of the tract." Initially we note that defendants did not admit that such a conversation had occurred. The trial court did not make findings of fact, thus we assume the trial court could have believed that such a conversation did not occur. *McAdams v. Lankford,* 751 S.W.2d

816, 818 (Mo.App.1988). The burden to establish reentry was on the plaintiff. *Metropolitan St. Louis Sewer District v. Holloran,* 756 S.W.2d 604, 606 (Mo.App.1988). To interrupt the adverse use by defendants plaintiffs must take some action that showed an intention to assert dominion against the adverse user. *Id.* For example, in *Pierce v. Austin,* 651 S.W.2d 161 (Mo.App.1983), the record owners drove stakes into the portion of a driveway they claimed and posted a sign notifying defendants that they could no longer use the portion that was fenced off. *Id.* at 162. Since the evidence showed that possession began in 1974[2] and plaintiffs did not take action until 1986 we agree with the trial court that the title has passed to defendants.

The judgment is affirmed.

STEPHAN and CRANE, JJ., concur.

---

**2.** Plaintiffs did not raise the issue of whether it was appropriate to "tack" the time periods of defendants and their predecessor in title to determine if the 10 year time period has been

exceeded. We conclude that "tacking" is appropriate here. *See Kennedy v. Findley,* 552 S.W.2d 352 (Mo.App.1977).