Arthur DALTON and Janet Dalton, Husband and Wife, Plaintiffs/Respondents,

v.

David L. REINAGEL, Defendant/Appellant.

No. 59309.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 20, 1991.

J. Patrick O'Loughlin, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for defendant/appellant.

Donald R. Rhodes, Bloomfield, for plaintiffs/respondents.

REINHARD, Presiding Judge.

Defendant appeals from a judgment against him for breach of a lease that awarded plaintiffs the sum of $12,595.58. We affirm.

Plaintiffs own the Delta Fertilizer Company in Delta, Missouri. In 1987 plaintiffs decided to sell the business and listed it with a broker in Cape Girardeau. In August of 1987 defendant toured the business and after two visits expressed interest in purchasing it. The sale was to include a going business which had substantial personal property necessary to the operation of the business and the real estate upon which an office/warehouse and storage buildings had been built. In addition, a small tract of land had been leased for $75 per year from neighboring landowners, the Hendersons, for equipment storage. Defendant was unable to secure financing to purchase the business; instead a business lease was negotiated between plaintiffs and defendant. The lease, in pertinent part, provided:

(1) an initial payment of $17,500 by defendant;

(2) monthly payments of $1,517.42 from January 1, 1988, through December 31, 1995;

(3) two additional payments of $3,300 on January 1, 1989, and $3,630 on January 1, 1990;

(4) defendant was to have the option of purchasing the business for a set price at the termination of the lease in 1995 or renewing for an additional five years;

(5) if the lessee exercised the option to purchase, the lessor would provide the lessee with a good warranty deed and an abstract of the title of the real property.

The lease also contained a list of all the business property including a sub-heading entitled "*Real Property:* 17,000 square feet of land with Quick [sic] Claim Deed from the Missouri Pacific Railroad; 1–36 × 50 office/warehouse with restrooms; 1–36 × 60 fertilizer bulk storage building and 5—100 ton bins."

According to defendant he discovered in December 1987 that a portion of the office/warehouse building was located on the land leased from the Hendersons. However, he continued to operate the business

until July 1, 1988. Sometime in early June defendant approached plaintiff about the immediate purchase of the business. Near the end of June defendant sent a letter suggesting that the terms of the lease be adjusted downward. At the end of June, defendant told plaintiff that he was giving the property back to them. He did not pay the June payment nor any payments thereafter. Plaintiffs reentered the premises on July 1, 1988, and learned that defendant had sent letters to customers stating that he was moving to a new location. Subsequently, plaintiffs filed suit to collect rents, damage to property and attorney's fees as provided in the lease agreement. Defendant, in his answer, affirmatively pled fraud as a defense and countersued, claiming that plaintiffs had breached the contract by misrepresenting the amount of land owned by the business and by failing to assist him in learning the business. Defendant requested rescission of the contract asserting that had he known that one of the buildings was partially on the leased real estate he would not have entered into the contract. After trial, the court ruled for plaintiffs on their cause of action and against defendant on his counterclaim. It is from this judgment that defendant appeals.

The standard of review in a court-tried case is that of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where no findings of fact or conclusions of law were requested or given, all factual issues are to be deemed found in accordance with the result reached and we will affirm under any reasonable theory presented by the evidence. *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 225 (Mo.App.1980).

Defendant contends that the court erred "in finding that there was no detrimental reliance by defendant upon Dalton's misrepresentations because such a finding was against the weight of the evidence." Specifically, defendant notes that, "Dalton admitted that Reinagel relied on his word, that there was no evidence to contradict this testimony, and that the matters which were misrepresented were material."

The evidence consisted of the testimony of the plaintiff, Arthur Dalton, defendant, and defendant's surveyor. The surveyor had surveyed the area using plaintiffs' Quit Claim Deed from the Missouri Pacific Railroad and Hendersons' Warranty Deed. Based upon these deeds the surveyor concluded that all but seven feet of the easternmost building was on the land described in Hendersons' Warranty Deed and not included under the description in plaintiffs' Quit Claim Deed.

To prevail upon his claim defendant must prove all of the elements of misrepresentation: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the falsity or his ignorance of the truth; 5) the speaker's intent that his statement be acted upon; 6) the hearer's ignorance of the falsity of the statement; 7) the hearer's reliance on the truth of the statement; 8) the hearer's right to rely thereon; and 9) the hearer's consequent and proximate injury. *Cummins Missouri, Inc. v. Thierath*, 684 S.W.2d 921, 923 (Mo.App.1985). All elements are questions of fact that appropriately are determined by the factfinder. *Carnahan v. American Family Mut. Ins. Co.*, 723 S.W.2d 612 (Mo.App. 1987).

Although the trial court did not make findings of fact, the judge did make the following statement at the time of his ruling:

> [The Court]: As a matter of law, I think detrimental reliance is the hallmark of misrepresentation and I find, Mister Reinagel, that if you relied on representations made by the Daltons, you have not done so to your detriment, which means you haven't lost anything.

The trial court's judgment can be supported on three grounds, 1) failure of the defendant to show a false representation; 2) the materiality of the representation; and 3) defendant's detrimental reliance.

The contract provided that at the end of the eight year lease defendant had the option to purchase the business or re-

new the lease for five more years. The lease provided, "If lessee exercises the option to purchase, lessors will provide lessee with *good warranty deed and abstract to real property.*" It is clear that plaintiffs believed that the buildings listed in the inventory of real estate were on their property. According to the evidence before the court the plaintiffs had purchased ½ of the business in 1975, the other half in 1976. The building at issue was built in 1977. The Henderson lease had been in existence from the beginning of plaintiffs' ownership, and defendant continued to pay the $75 per year rental. Arthur Dalton testified that Henderson also believed that the building was on plaintiffs' land. Title to property can be obtained by adverse possession and the construction of a building on land that the builder mistakenly believes to be his can be the basis of an adverse possession claim. Nothing can be more open and hostile than the building of a building. *See Dorner v. Wishon,* 809 S.W.2d 866, 869 (Mo.App.1991). In any event, this case is not a title dispute between two owners. Our observation is relevant in that it supports our determination that defendant's survey evidence does not conclusively support his claim that plaintiffs made a false representation to him.

While the parties initially intended a sale of the business, the agreement finally arrived at was a long term lease. The agreement provided for a term of eight years with an option to the lessee to either purchase or renew the lease for a five year period at the end of the term. The property being purchased by the defendant was a going fertilizer business, the only one in a small farm community. Defendant does not contend that his leasehold operation was in any way affected by the alleged misrepresentation; at the time of the breach over 90 months remained before plaintiffs were required to deliver what we assume was to be a marketable title. These circumstances along with the following evidence could be considered by the court in determining the materiality, reliance and detriment in regard to this alleged misrepresentation. Defendant contends that in December 1987 he had learned of the location of the building. He did not immediately notify plaintiffs; indeed he continued the lease during the most productive and profitable period for which fertilizer can be sold, the growing season. In early June he discussed with plaintiffs the earlier purchase of the business, and still made no mention of the building's location. On June 8th, he sent a letter to plaintiffs suggesting the readjustment of the rent for the next 91 months (the term of the lease) and the elimination of the option to purchase. In that letter he valued the buildings at $40,000. On July 1, 1988, he sent a letter to customers announcing a relocation of the business and stating the advantages of his new location. The first knowledge plaintiffs had of defendant's complaint as to the building was after plaintiffs' suit was filed. These actions are wholly inconsistent with defendant's assertions that the alleged misrepresentation was material and that he was harmed by it. We reach this conclusion in spite of plaintiffs' statement that defendant relied upon his representation because there is sufficient evidence to support the trial court's judgment finding no *detrimental* reliance.

Based upon the entire record in this case the judgment of the trial court is affirmed.

GARY M. GAERTNER and CRANE, JJ., concur.