Brian BRASHER, Respondent,

v.

Troy CRAIG and Heather Craig, Appellants.

WD 78366

Missouri Court of Appeals, Western District.

FILED: February 23, 2016

Modified March 29, 2016

448

Harold L. Dump, II, Clinton, MO for respondent.

James C. Johns and Gary V. Cover, Clinton, MO for appellants.

Before Division Two: Mark D. Pfeiffer, Presiding Judge, Lisa White Hardwick And James E. Welsh, Judges

Lisa White Hardwick, Judge

Troy and Heather Craig (hereinafter "Craig")[1] appeal the circuit court's judgment quieting title to disputed parcels of property in favor of Brian Brasher. Craig contends the circuit court erred in finding that Brasher established title to the land through adverse possession. For reasons explained herein, we find no error and affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

On July 8, 2003, Arthur Stotts conveyed the west half[2] of his land in Henry County to Craig. Stotts retained the adjoining land situated to the east of Craig's property. As a condition of the land sale contract, Stotts was required to obtain a survey to determine the legal boundary between the properties and construct a fence thereon separating the two. Stotts informed Craig that it would be "a while" before he could obtain a survey and Craig agreed to allow Stotts to measure the boundary line himself.

Stotts measured the boundary and inserted steel posts to mark the location of the fence. At that time, trees and brush obscured the view across the property. Stotts bulldozed the brush and discovered that a ditch on the south portion of the property was angled in such a way that construction of the fence in a straight line would be difficult and expensive. Stotts proposed that the fence "jog" around the

ditch onto his property and that he construct a portion of the fence on Craig's property so that each party would have approximately the same acreage. Craig agreed to the proposed location of the fence to accommodate the ditch. Stotts constructed the fence in a zig-zag pattern, with different points of the fence encroaching on each party's property.

The fence was completed in approximately the first week of August 2003. Thereafter, Stotts used all of the property on the east side of the fence to contain wild animals and train dogs. He constructed and maintained a gravel road running along the fence line and made improvements to the fence itself. Craig did not use the property on the east side of the fence, aside from his children occasionally crossing over the fence to play.

In 2007, Stotts sold his property to Brian Brasher. Brasher similarly used all of the property east of the fence line, believing that he owned the land up to the fence. He used the north portion for pasturing and constructed a disc golf course on the south portion as part of a campground. Brasher continued to maintain the gravel road and make repairs to the fence when necessary.

In 2012, Craig confronted Brasher when he noticed that Brasher had been frequenting property that Craig claimed to own. Brasher asserted that he owned all of the land east of the fence. Sometime in 2013, Craig obtained a survey to determine the correct legal boundary. Thereafter, Craig began removing portions of the

1. Because the circumstances of this case primarily involved Troy Craig, we refer to "Craig" throughout to describe Troy individually.

2. In November 2004, a "corrected deed" was made, which conveyed the west 80 acres of the same parcel of land to Craig, excluding the land that had already been conveyed by the 2003 deed. Stotts originally believed that he owned 160 acres, but later discovered that he owned only 143 acres. Therefore, Craig wanted to clarify that he owned the west "80 acres" of the land rather than the west "half."

fence in order to relocate it to the true boundary line as shown by the survey.

On August 16, 2013, Brasher filed suit seeking to quiet title to the property through adverse possession. He contemporaneously filed an application for a preliminary injunction and requested a temporary restraining order to prevent Craig from removing the fence. Craig filed a counterclaim seeking to quiet title to the disputed parcels in accordance with the language of the parties' respective deeds.

At the hearing, Brasher presented evidence that Craig had reached an agreement with Stotts regarding the location of the fence. Brasher argued that he had obtained title to the land east of the fence through adverse possession. The circuit court agreed.

The Court finds that the boundary established by the fence between the properties owned by [Brasher] and [Craig] is a boundary by acquiescence. Based upon the testimony, the Court finds that [Craig] and [Stotts] agreed to the fence line being placed in its present location in July of 2003, near the time of the closing of the sale from Stotts to [Craig]. Based upon the testimony of [Stotts], the Court finds that the location of the proposed fence was marked by [Stotts] in July of 2003. The Court finds that [Craig] agreed to this location of the fence, including the jog on the south end around the ditch. The Court finds that [Craig] and [Stotts] agreed at that time to "trade" the tracts on either side of the actual property line, by jogging the fence around the ditch on the south, and by varying the fence location to the north. Based upon the testimony, the Court further finds that the fence was completed in early August of 2003. The Court finds that both the agreement as to the location of the fence, and the construction of the fence, occurred more than ten years prior to the filing of the Petition in this case. The Court also finds that the ownership and title to the [disputed parcels] has been established by adverse possession.

The circuit court entered its judgment quieting title in accordance with the description of the fence line, awarding Brasher all property east of the fence. Craig appeals.

## STANDARD OF REVIEW

We review this court-tried case under the standard articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "We review the evidence in a light most favorable to the judgment, accept it as true, and disregard any contradictory evidence." *Lowe v. Hill*, 430 S.W.3d 346, 348–49 (Mo.App. 2014). We also defer to the circuit court's determination of the weight to be given the evidence and credibility of the witnesses. *Id.* at 349. The circuit court is free to believe some, all, or none of the testimony of any witness. *Underwood v. Hash*, 67 S.W.3d 770, 774 (Mo. App. 2002).

## ANALYSIS

In his sole point on appeal, Craig contends the circuit court erred in entering its judgment quieting title to the disputed parcels through adverse possession. Specifically, Craig asserts that because Brasher never pled boundary by acquiescence, the court was precluded from basing its decision on that theory. Craig also argues that Brasher's evidence was insufficient to establish title to the disputed parcels through adverse possession.

■ The theories of boundary by acquiescence and adverse possession are sepa-

rate and distinct legal doctrines. *Shoemaker v. Houchen*, 994 S.W.2d 40, 44 (Mo. App. 1999). Therefore, even if Brasher failed to properly plead boundary by acquiescence as Craig asserts, he could still claim title to the disputed parcels by adverse possession. In that case, "the *boundary* to which there was claimed to have been an acquiescence or agreement merely defined the outer edge of the land [Brasher] claimed to have *adversely possessed*." *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 190 (Mo.App. 2012) (emphasis in original).

█ To prevail on a claim of adverse possession, it was Brasher's burden to prove by a preponderance of evidence that his possession of the disputed parcels was: (1) actual; (2) hostile; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years. *Soderholm v. Nauman*, 409 S.W.3d 382, 388 (Mo.App. 2013). Brasher has the burden of proving each element and "failure to prove any one element will defeat the claim." *Id.* In the instant case, the circuit court did not make specific findings as to each element, but found that title to the disputed tracts "has been established by adverse possession."

### Actual possession

█ The claimant's "present ability to control the land" and "his intent to exclude others from such control" are relevant considerations in determining whether the actual possession element is satisfied. *Edmonds v. Thurman*, 808 S.W.2d 408, 410 (Mo.App. 1991) (citation omitted). "Where the claimant occupies land without color of title, in order to prevail, he must show physical possession of the entire area claimed." *Murphy v. Holman*, 289 S.W.3d 234, 237 (Mo.App. 2009) (citation and quotations omitted). This is shown by any combination of "continued acts of occupying, clearing, cultivating, pasturing, build-

ing fences or other improvements, and paying taxes." *Id.* at 238 (citation and quotations omitted).

█ Testimony was presented from both Stotts and Brasher that they had actual possession of all the property up to the fence line. Stotts said that he used the whole property to contain wild coyotes and train dogs and that the fence he erected was specifically designed for such purposes. He continuously mowed up to the edge of the fence, as well as graveled and maintained a road running along the fence. Brasher similarly used all of the property up to the fence line, using the north parcel for his goats and chickens and using the south parcel as part of a disc golf course and campground. Like Stotts, Brasher continued to maintain the fence separating the properties. He put in rocks, concrete, and railroad irons along the fence to prevent water from washing out toward the bottom of the fence and to prevent animals from digging under it. Furthermore, he often made repairs to the fence as a result of trees falling from both sides of the fence. Thus, the actual element was satisfied. *See Luttrell v. Stokes*, 77 S.W.3d 745, 751 (Mo.App. 2002) (actual possession element satisfied when claimant pastured cattle on wild or undeveloped land, maintained and repaired a fence, and maintained and fertilized the land).

### Hostile possession

█ To satisfy the hostile element, the claimant must show that he intended to occupy the disputed parcels as his own. *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo.App. 1996). Hostile possession does not imply "ill will or acrimony." *Porter v. Posey*, 592 S.W.2d 844, 850 (Mo.App. 1979). In other words, it is not necessary that the claimant intend to take the property away from the true owner. *Walker v. Walker*, 509 S.W.2d 102, 107 (Mo. 1974).

Instead, "[i]t is the intent to possess, and not the intent to take irrespective of his right, which governs." *Id.* (citation and quotations omitted).

▰▰▰ Craig argues that a November 2004 deed—in which Stotts conveyed the west 80 acres of his property to Craig—defeats any claim that Stotts possessed the land in a hostile manner because it described a portion of the property for which Brasher now claims was possessed adversely. Notwithstanding this deed, both Stotts and Brasher intended to occupy the entire property up to the fence line as their own. Neither treated their possession of the property as being subservient to a "recognized, superior claim of another." *Porter,* 592 S.W.2d at 850 (citation omitted). "[T]here is no requirement for adverse possession that [the claimant] be holding title to take away from the true owner." *Kitterman,* 924 S.W.2d at 876. The hostile element was satisfied.

### Open and Notorious possession

▰▰▰ To satisfy the open and notorious element, the claimant must show "that the occupancy or possession manifested a claim of ownership and was conspicuous, widely recognized and commonly known." *Porter,* 592 S.W.2d at 849. There must be visible acts of ownership such as maintaining and improving the property. *Kitterman,* 924 S.W.2d at 876. These acts give the true owner cause to know that an adverse claim of ownership is being made by another. *Porter,* 592 S.W.2d at 849.

▰▰▰ Because the elements of adverse possession "are not mutually exclusive," acts which support a finding of hostile possession, "may and often do logically satisfy" the open and notorious element. *Id.* at 850. Thus, the same acts which satisfied the hostile element satisfy the open and notorious element in this case. Stotts built and maintained a road running along the fence line. Similarly, Brasher used, occupied, and maintained all of the property up to the fence. These are certainly acts of ownership sufficient to put Craig on notice that both Stotts and Brasher were openly and notoriously in possession of the property on the east side of the fence. *See Luttrell,* 77 S.W.3d at 751; *Porter,* 592 S.W.2d at 849.

### Exclusive possession

▪ ▰▰▰ The exclusive element is satisfied when the claimant possesses the land for himself, and not for others. *Luttrell,* 77 S.W.3d at 751. The claimant must show that he "wholly excluded" the true owner from possession of the property. *Id.* (citation omitted). Both Stotts and Brasher used the property on the east side of the fence for themselves as owners of the property. Craig argues that Stotts did not exclusively occupy the property on the east side of the fence because he allowed Craig's children to come over the fence and play on the land. "However, sporadic use, temporary presence, or permissive visits by others, including the record owner, will not defeat the exclusive element." *Id.* Brasher needed only to show that the disputed land was not jointly possessed with Craig. *Id.* Both Stotts and Brasher said that they held such property for themselves and not for anyone else. Thus, the exclusive element was satisfied. *See id.* (finding true owner's occasional hunting on the property insufficient to defeat exclusive element of adverse possession).

### Continuous possession for ten years

▰▰▰ The final requirement is that possession be continuous for a ten year period. *Dorner v. Wishon,* 809 S.W.2d 866, 869 (Mo.App. 1991). "An adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period." *Con-*

*duff v. Stone,* 968 S.W.2d 200, 203 (Mo. App. 1998). However, "[t]he true owner of land may interrupt an adverse possession by reentry under circumstances showing an intention to assert dominion against the adverse user." *Metro. St. Louis Sewer Dist. v. Holloran,* 756 S.W.2d 604, 606 (Mo.App. 1988). In order to interrupt the non-title holder's adverse possession, the true owner must take some action manifesting an intention to assert dominion against the adverse possessor. *Dorner,* 809 S.W.2d at 869. "The burden to establish a reentry is upon the person seeking to defeat the claim of adverse possession." *Holloran,* 756 S.W.2d at 606.

▄▄▄ Craig argues that Brasher cannot prove that possession of the disputed parcels was adverse for the necessary ten year period. Specifically, Craig argues that he "took steps not only to voice [his] disagreement with the boundary but actually began removing the boundary fence well before the expiration of the ten year period."

Brasher presented evidence that, at the latest, the fence separating the properties was completed by the first week of August 2003. Although there was evidence that Craig began removing portions of the fence, it was unclear from the evidence presented exactly when this removal occurred. Brasher stated in his pleadings that the removal began around July 25, 2012. He alleged that this date was a typographical error and that the year was actually 2013. Craig presented evidence that Brasher's attorney wrote him a letter which referenced removal of the fence oc-

curring approximately August 2, 2013. Craig himself testified, however, that removal of the fence did not begin until after he obtained his own survey showing the true boundary line, which was not completed until August 5 or August 7, 2013. Craig "thereafter" contacted a fence builder to obtain a cost estimate for the relocation of the fence to the correct boundary line. Brasher filed suit on August 16, 2013, asserting that "[t]his lawsuit occurred as a result of [Craig's] beginning to remove the fence."

Thus, the evidence that was before the circuit court indicated that the fence removal began anywhere from July 25 to August 16, 2013. Viewing the evidence in the light most favorable to the result reached, *Dorner,* 809 S.W.2d at 868, the court could have credited Craig's testimony that he did not begin removing the fence until after August 7, 2013—when the survey was completed and more than ten years after the fence was erected in the first week of August 2003. Thus, Craig failed to establish that he reentered the land "under circumstances showing an intention to assert dominion against the adverse user" within the ten year period sufficient to interrupt Brasher's adverse possession. *Holloran,* 756 S.W.2d at 606.[3]

▄▄▄ Nevertheless, Craig argues that because Brasher was aware that there was a dispute as to the location of the boundary in 2007, he could not satisfy the continuous element. Brasher contradicted this assertion when he testified that Craig had "mentioned" something about the bound-

---

**3.** The transcript of the hearing on the parties' post-trial motions reveals that the circuit court may have been under the belief that Craig was required to *bring suit* in order to interrupt the ten year period for adverse possession, regardless of whether he removed the fence. Although the circuit court believed that Craig had not interrupted the period of

adverse possession because he failed to file suit, we will affirm its judgment on any basis supported by the record. *Thiel v. Miller,* 164 S.W.3d 76, 84 (Mo.App. 2005). As noted, evidence exists in the record supporting the conclusion that Craig had not taken action to remove the fence until after the ten year period had expired.

ary line in 2007, but that he was unaware that a dispute existed and that he "didn't consider it an issue." The circuit court was free to disbelieve Craig's testimony that he had, in fact, informed Brasher of a dispute. It was Craig's burden to establish that he had taken "some *action* that showed an intention to assert dominion against the adverse user." *Dorner*, 809 S.W.2d at 869 (emphasis added). Viewing the evidence in the light most favorable to the judgment, we conclude that the continuous element was satisfied.

Craig's sole point on appeal is denied.[4]

### CONCLUSION

We affirm the circuit court's judgment.

All Concur.

---

4. Because we find that Brasher established title to the disputed parcels through adverse possession, we need not address the applicability of the theory of boundary by acquiescence.