

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

A2 CREATIVE GROUP, LLC, )
 )
Respondent, )  **WD82454**
 )
v. )
 )  **OPINION FILED:**
 )  **March 3, 2020**
SOHEIL K. ANDERSON, )
 )
Appellant. )

**Appeal from the Circuit Court of Platte County, Missouri**
**The Honorable Thomas C. Fincham, Judge**

**Before Division One:**  Thomas N. Chapman, Presiding Judge, and
Mark D. Pfeiffer and Anthony Rex Gabbert, Judges

Ms. Soheil Anderson ("Ms. Anderson") appeals the judgment of the Circuit Court of Platte County, Missouri ("trial court"), following a bench trial, ruling in favor of A2 Creative Group, LLC ("A2") on its claim of adverse possession of real property.  On appeal, Ms. Anderson asserts sufficiency of evidence arguments regarding A2's proof of the "exclusive" and "continuous" elements of its adverse possession claim.  We affirm.

### Factual and Procedural Background

In August of 2017, A2 filed a petition to quiet title based on a claim of adverse possession of an approximate 400-square-foot tract of land on Block 22 in Parkville, Missouri, legally located on Lot 20 bordering Lot 19 and Lot 18 ("disputed property").[1]

---

[1] More specifically, the disputed property consists of:

A2 is the record title holder of the property at 504 Main Street, Parkville, Missouri, doing business as the Main Street Inn ("Inn Property"), and its principals are Kathy and Jason Ayers, who live on the Inn Property and operate the Inn. The Inn Property at 504 Main Street is legally described as "Lots 18 and 19, Block 22, PARKVILLE, a subdivision in Parkville, Platte County, Missouri, according to the recorded plat thereof." The Inn Property was owned by Gary and Cristina Worden from May of 2005 until it was sold to A2 on June 30, 2016, and during the Wordens' ownership the Inn Property was operated as a bed and breakfast under several proprietors, including Jason and Kathy Ayers prior to the sale to A2 in 2016. The Wordens also have owned 500 Main Street (Lot 16) since 1988 and 502 Main Street (Lot 17) (collectively "Worden Property") since sometime between 1988 and 2005, upon which there are two residences. Ms. Anderson has owned and lived in the house on Lots 15, 20, and 21 of Block 22 since 1992.

Neither the Wordens nor A2 nor Ms. Anderson obtained a "metes and bounds" boundary survey of their respective properties prior to purchase. From at least the time of Wordens' purchase of 500 Main Street in 1988, there had been a stone foundation and wall running north to south on Lots 20 and 15, five feet west of the plat boundary with Lots 19, 18, and 17. Mr. Worden testified that the residents had believed the stone wall to be the boundary line between the properties since that time, and that at one point, he had a contractor come and fix part of the wall, during which Ms. Anderson did not inform him that he was on her property. Sometime before May in 2005, Ms. Anderson built a wooden privacy fence along the west side of the stone wall.

---

ALL THAT PART OF LOT 20, BLOCK 22, PARKVILLE, A SUBDIVISION IN PARKVILLE, PLATTE COUNTY, MISSOURI BEING DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHEAST CORNER OF SAID LOT 20; THENCE S00°06'52"E, ALONG THE EAST LINE OF SAID LOT 20, A DISTANCE OF 80.00 FEET TO THE SOUTHEAST CORNER OF SAID LOT 20; THENCE S89°53'08"W, ALONG THE SOUTH LINE OF SAID LOT 20, A DISTANCE OF 5.00 FEET; THENCE N00°06'52"W, ALONG A LINE 5.00 FEET WEST OF AND PARALLEL WITH THE EAST LINE OF SAID LOT 20, A DISTANCE OF 80.00 FEET TO A POINT ON THE NORTH LINE OF SAID LOT 20; THENCE N89°53'08"E, ALONG SAID NORTH LINE, A DISTANCE OF 5.0 FEET TO THE POINT OF BEGINNING.

In May of 2016, Ms. Anderson commissioned a survey of her property after which the parties became aware that the disputed property was in fact on Ms. Anderson's property. In August of 2017, A2 filed its first amended petition to quiet title based on a claim of adverse possession of the disputed property. The parties stipulated to the disputed property area and it is shown in the survey below (the approximately 400-square-foot tract of land legally located on Lot 20 bordering Lot 19 and Lot 18).



A bench trial was held August 7, 2018, following which the trial court issued its findings of fact, conclusions of law, and judgment ruling in favor of A2 on its claim that it adversely possessed the disputed property. The trial court concluded that A2 proved by a preponderance of the evidence that its possession of the disputed property was "(1) hostile; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for at least 10 years."

Ms. Anderson appeals. Further relevant facts will be set forth below as necessary to our analysis.

**Standard of Review**

Our review in this case is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "We will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Brasher v. Craig*, 483 S.W.3d 446, 450 (Mo. App. W.D. 2016) (citing *Murphy*, 536 S.W.2d at 32). The evidence is viewed in the light most favorable to the judgment and contradictory evidence is disregarded. *Id.* "We also defer to the circuit court's determination of the weight to be given the evidence and credibility of the witnesses." *Id.* "The circuit court is free to believe some, all, or none of the testimony of any witness." *Id.*

**Analysis**[2]

Anderson raises two points on appeal, claiming the trial court erred in holding that A2 proved the "exclusive" and "continuous" elements of its adverse possession claim because there was no substantial evidence that A2 exclusively and continuously possessed the disputed property.

---

[2] A2 filed a motion to dismiss this appeal which was taken with the case, asserting that Anderson transferred her interest in the land that is the subject of this adverse possession action, including Lot 20 and Lot 21, Block 22, by quitclaim deed after the entry of judgment but before the hearing on Anderson's motion to amend the judgment. The alleged quitclaim deed was not before the trial court at any point and is not included in the record on appeal.

Section 507.100.3 provides in relevant part: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Rule 52.13(c) provides nearly the same. The "motion" referred to by these provisions is described in section 507.100.1(1): "The motion for substitution may be made by the successors . . . or by any party and, together with the notice of the hearing, shall be served on the parties as provided in section 506.100, and upon persons not parties in the manner provided for the service of a summons"; and in Rule 52.13(a)(1): "A motion for substitution may be made by any party or by the successor . . . . Such motion, together with notice of hearing shall be served upon the parties as provided in Rule 43.01, and upon persons not parties in the manner provided for the service of a summons."

These provisions require "that a transfer of interest *after* an action has been commenced does not summarily divest the original parties of the right to continue pending litigation." *US Bank Nat'l Ass'n v. Cox*, 341 S.W.3d 846, 851 (Mo. App. W.D. 2011) (footnote omitted). "The remedy for a person who believes he or she has or will be affected by such a transfer is not, therefore, to seek dismissal of the action, but rather to seek substitution and/or joinder of the claimed successor in interest—relief which a court may (or may not) grant in its discretion." *Id.*

4

The doctrine of adverse possession is meant to encourage landowners to timely bring border disputes, so as to weed out stale claims. *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009). "When a border, even though erroneous, is observed by all parties as the boundary for the statutory period, it becomes the true boundary through adverse possession." *Id.* "To acquire title by adverse possession or prescription, possession must be: (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years prior to the commencement of action." *Id.* The burden is on the party claiming ownership by adverse possession to prove these elements by a preponderance of the evidence. *Id.* "Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique." *Kitterman v. Simrall*, 924 S.W.2d 872, 876 (Mo. App. W.D. 1996). "Each case must be decided in light of its own unique circumstances. Much depends on the location, the character and the use to which the land in question may reasonably be put." *Id.* (internal quotation marks omitted).

*Exclusive Possession*

To show its possession was "exclusive," A2 was required to show that it (and its predecessors in interest) possessed the land for itself, and not for others, and that it "wholly excluded the true owner from possession of the property." *Brasher*, 483 S.W.3d at 452 (internal quotation marks omitted). This element is not defeated by "sporadic use, temporary presence, or permissive visits by others, including the record owner," and A2 had only to "show that the disputed land was not jointly possessed with" Ms. Anderson. *Id.* This court has held that "[m]aintenance of a residential yard such that it appears to be part of the property on which the

---

Here, neither A2, nor Anderson, nor any party to whom Anderson may have transferred her property interests have filed a motion seeking substitution and/or joinder of the party to whom Anderson may have transferred her property interests. A2's motion to dismiss this appeal is denied. "The effect of this appeal on the rights of [any party to whom Anderson may have transferred her property interests] is not a matter properly before this Court for discussion, consideration, or determination." *Id.*

residence is situated is evidence from which a trier of fact can infer that the possession of the property was exclusive." *Ferguson v. Hoffman*, 462 S.W.3d 776, 781-82 (Mo. App. W.D. 2015) (internal quotation marks omitted).

Here, as in *Ferguson*, there was evidence that during the requisite time period, A2 and its predecessors "maintained and utilized the disputed tract of land for [themselves]" and "never maintained the property for [their] neighbors and exclusively used and maintained the disputed strip" for the required ten-year time period. *Id.* at 782.

Most notably, there was testimony that in the summer of 2012, when requested to remove an overgrowth of weeds and vines coming over the privacy fence, **Ms. Anderson** "instructed that it was on [Wordens'] side and therefore [Wordens'] responsibility." There was also testimony that, during the Wordens' ownership of the Inn Property, Mr. Worden and people hired by him maintained the landscaping in the disputed area, cutting down trees when they died from overgrowth over the fence, laying down a weed tarp and mulch, and watering the landscaping in the flower bed. Mr. Worden testified that during his ownership, Ms. Anderson never tried to maintain or maintained the disputed property. Mr. Worden testified that he did not ask permission from anyone to cut down the trees in the disputed property when they were dying because he understood the maintenance of that area was his responsibility because he believed it belonged to him and his wife and treated it as though it did.

Ms. Worden testified that during their ownership she worked in the disputed property because "[i]t was our property[.]" She testified that they did "[m]ulching, bed flowers, cutting the grass, cutting the overgrown plants. The trees that were there . . . got sick and when we owned the property we cut them down and put flowers and greens there." She testified that she and her husband "maintained the beds and we put down the paver stones and the edging and planted flowers and continued to maintain that entire area[.]" Ms. Worden testified that she did not at any

6

point ask Ms. Anderson whether she could have permission to do any work on the disputed property.

Ms. Ayers testified that she and her husband have contact with the disputed property dozens of times daily, regularly utilizing the driveway and walkway in the space to access the service entrance to the Inn, hauling supplies and equipment through it, and trimming the plantings in and around that area. Ms. Ayers testified that she never asked for permission from Ms. Anderson to use the disputed property for any purpose during the time she and her husband were proprietors of the Inn nor following their purchase thereof. Ms. Ayers testified that during their proprietorship, purchase, and ownership of the Inn Property, she assumed that the disputed property was part of the Inn Property and did not let anyone except the principals of A2 and its invitees use the disputed property. Mr. Ayers testified that:

> I've, we've installed hardscapes, paving stones, edging stones. We've mulched several times. We've put down weed mat when needed. I've mowed and string-trimmed the property. Each time I've done that I go back and blow off the driveway and the walks with a leaf blower. Several times a year, the spring and fall time, I power wash the driveway, the brick walkway. There have been plantings, everything that's required to present a peaceful and beautiful property for the Main Street Bed & Breakfast.
>
> . . . .
>
> I don't know if that's an exhaustive list but we've put a lot of work and effort into maintaining the property and improving it . . . .

This substantial evidence supports the trial court's finding that A2 and the Wordens demonstrated visible acts of ownership over the premises, including maintaining and improving the disputed property to the exclusion of all others, including Ms. Anderson, seeking no permission to do so from Ms. Anderson. A2 put forth substantial evidence to show its possession was "exclusive," showing that it possessed the land for itself, and not for others, and that it "wholly excluded the true owner from possession of the property." *Brasher*, 483 S.W.3d at 452 (internal

quotation marks omitted). A2 had only to "show that the disputed land was not jointly possessed with" Ms. Anderson, and the above-discussed substantial evidence is more than sufficient to make such showing. *Id.* *See also Ferguson*, 462 S.W.3d at 781-82 ("Maintenance of a residential yard such that it appears to be part of the property on which the residence is situated is evidence from which a trier of fact can infer that the possession of the property was exclusive." (internal quotation marks omitted)).

Because substantial evidence on the record supports a finding that A2 and its predecessors in interest "maintained and utilized the disputed tract of land for [themselves]" and "never maintained the property for [their] neighbors and exclusively used and maintained the disputed strip," the trial court's judgment that A2 met the "exclusive" element of their claim of adverse possession was not erroneous. *Id.* at 782.

### *Continuous Possession for Ten Years*

"The ten years of possession must be consecutive years and need not be the ten years just prior to the filing of the law suit, but once the period has run, the possessor is vested with title and the record owner is divested." *Kitterman*, 924 S.W.2d at 876. "An adverse possession claimant may tack his possession to that of his predecessors in title to establish the requisite ten year period." *Brasher*, 483 S.W.3d at 452 (internal quotation marks omitted).

Ms. Anderson argues that there was no evidence of anyone living at or operating the Inn Property from 2007 through 2009, or any corresponding use of the disputed property by the Wordens or their agents during that time. Though Ms. Anderson has mischaracterized the evidence in support of the trial court's judgment, we note that it is well established that "continuous possession clearly does not require continuous occupation and use." *Gurwit v. Kannatzer*, 788 S.W.2d 293, 296 (Mo. App. W.D. 1990) (collecting cases). In fact, "[t]emporary absences without an intent to abandon will not break continuity." *Ortmeyer v. Bruemmer*, 680 S.W.2d 384, 393

8

(Mo. App. W.D. 1984).  Here, there was evidence of occupancy, upkeep, and no intent to abandon the disputed property.

Mr. Worden testified that he and his wife owned the Inn Property for eleven years (including 2007, 2008, and 2009).  Mr. Worden testified that there was no break in ownership, and the Inn Property was operated as a bed and breakfast during that time, under various proprietors with whom he extensively participated as partners, of which he specifically mentioned three (Becky Fritz, Grant Schifflett, and Tiffany Miller) in addition to the Ayerses.  Additionally, Mr. Worden testified to hiring people to perform maintenance on the disputed property even when he was not present or able to do so himself.  Ms. Worden also testified that during the period between the end of 2005 and 2010, during which the Wordens lived at a different property away from the Inn Property and the Worden Property, they had someone running the Inn for them and they took care of the property while the Wordens were living elsewhere.

Substantial evidence supported the trial court's conclusion that A2 showed the "continuous" element of adverse possession.  The trial court did not err in so concluding.

### Conclusion

The judgment of the trial court is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Thomas N. Chapman, Presiding Judge, and Anthony Rex Gabbert, Judge, concur.

9