IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
STACEY MCELVAIN, )
 )
 Respondent, )
 )
v. ) WD83737
 )
JASON STOKES, ET AL., ) Opinion filed: April 20, 2021
 )
 Appellants. )

 APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI
 THE HONORABLE JANET L. SUTTON, JUDGE

 Division Three: Thomas H. Newton, Presiding Judge,
 Gary D. Witt, Judge and W. Douglas Thomson, Judge

 Jason and Theresa Stokes (collectively, "the Stokes") appeal from the trial

court's judgment in favor of Stacey McElvain ("McElvain") on her claim of adverse

possession of real property. On appeal, the Stokes claim the trial court erred in

holding that McElvain proved the actual and hostile elements of adverse possession.

The Stokes claim that the trial court's findings as to both elements of adverse

possession are not supported by substantial evidence. We affirm.
 Factual and Procedural History

 Viewed in the light most favorable to the trial court's judgment,1 the evidence

adduced at trial reflects that McElvain owns real property adjacent to real property

owned by the Stokes in Clay County, Missouri. They share a common property line

running east to west, with the McElvain property north of the line and Stokes'

property south of the same line. Both properties are accessed from Nation Road

which is located along their eastern boundary lines and runs north and south. Often,

the parties refer to the eastern area near Nation Road as the "front" of their respective

properties, with the western area not near Nation Road being the "back" of the

properties.

 McElvain purchased her property with her now deceased husband on April 23,

2007, and continues to reside there. McElvain's property consists of 23 acres, which

is completely fenced and includes a home and a barn. McElvain and her late husband

purchased the property from Ronnie Mick who told her that he built the house in

1998-99, and the whole fence line was there at that time. When McElvain purchased

the property, she was told everything within the fence was her property.

 The Stokes moved into the property adjoining McElvain's property in 2017.2

In June 2018, McElvain received a letter from the Stokes stating that they were going

to unilaterally move the fence line between their properties north, such that the

 1"We view the evidence and all reasonable inferences in the light most favorable to the court's

judgment." Ferguson v. Hoffman, 462 S.W.3d 776, 780 (Mo. App. W.D. 2015).
 2At one time, the Stokes property and the McElvain property were one parcel. Theresa Stokes

testified the combined parcel was owned by her great-grandfather, Bill Mick. Over time the parcel
was divided and passed through various members of the Mick family.

 2
McElvain fenced property would be smaller. The Stokes disputed McElvain's

ownership of a strip of land of approximately 2.89 acres, located inside McElvain's

fencing, on the southern border of McElvain's property and adjacent to the northern

edge of the Stokes' property ("Disputed Property").3 McElvain informed the Stokes

that she believed the Disputed Property belonged to her. The only way to access the

back pasture of the McElvain property is through the Disputed Property because a

creek divides the front (east) and back (west) parts of her property.

 On April 11, 2019, McElvain filed a petition to quiet title by adverse possession,

ejectment, and trespass damages against the Stokes, The Hamilton Bank, and Larry

Snyder.4 A bench trial was held on February 18, 2020. On March 9, 2020, the trial

court entered judgment in favor of McElvain and against the Stokes on McElvain's

claim of adverse possession finding she "established all elements of adverse

possession and is entitled to obtain record title to the disputed property." 5 The trial

court found in favor of the Stokes on the counts of ejectment and trespass.6 The

Stokes appeal.

 3The legal description of the Disputed Property is contained in the trial court's judgment
affirmed herein.
 4Hamilton Bank is the grantee of the Stokes' deed of trust and Snyder is the trustee for such

deed of trust, both made parties due to their interest in the Stokes' parcel.
 5The trial court entered no judgment or findings of fact as to Hamilton Bank and Snyder. It is

evident, however, that any interest either of them could possibly have would be derived solely from
the Stokes being found to have an ownership interest in the Disputed Property, and therefore their
absence from the judgment bears no consequence to this appeal.
 6The trespass and ejectment counts against The Hamilton Bank and Larry Snyder were

dismissed via stipulation prior to trial.

 3
 Standard of Review

 "The appellate court will affirm the trial court's determination 'unless there is

no substantial evidence to support it, unless it is against the weight of the evidence,

unless it erroneously declares the law, or unless it erroneously applies the law.'"

Watson v. Mense, 298 S.W.3d 521, 525 (Mo. banc 2009) (quoting Murphy v. Carron,

536 S.W.2d 30, 32 (Mo. banc 1976)). "The trial court is free to believe or disbelieve

all, part or none of the testimony of any witness." Id. "'A claim that there is no

substantial evidence to support the judgment . . . necessarily involves review of the

trial court's factual determinations.'" Sauvain v. Acceptance Indem. Ins. Co., 437

S.W.3d 296, 302 (Mo. App. W.D. 2014) (citation omitted). "An appellate court 'will

overturn a trial court's judgment under [this] fact-based [standard] of review only

when the court has a firm belief that the judgment is wrong.'" Id. (citation omitted).

 "In reviewing questions of fact, the appellate court defers to the trial court's

assessment of the evidence if any facts relevant to an issue are contested." Id. at 303.

"When the evidence is contested, we defer to the trial court on factual issues; a trial

court is free to disbelieve any, all, or none of the evidence, and the appellate court's

role is not to re-evaluate the evidence through its own perspective." Id. "Accordingly,

we review the evidence in a light most favorable to the judgment, accept the evidence

favorable to the judgment as true, and disregard any contradictory evidence." Id.

 4
 Analysis

Points I and II

 We address Points I and II together because both points assert the trial court's

findings are not supported by substantial evidence.7 In Point I, the Stokes assert the

trial court erred in holding McElvain proved the actual possession element of adverse

possession as it was not supported by substantial evidence. In Point II, the Stokes

assert the trial court erred in holding McElvain proved the hostile possession element

of adverse possession as it was not supported by substantial evidence. Preliminarily,

however, we must address the fact that both points fail due to the Stokes' failure to

conform to mandatory requirements for not-supported-by-substantial-evidence

challenges. Taney County Title & Escrow, LLC v. Jensen, 600 S.W.3d 16, 28 (Mo.

App. S.D. 2020) (citing Houston v. Crider, 317 S.W.3d 178 (Mo. App. S.D. 2010)).

 A not-supported-by-substantial-evidence challenge has a distinct analytical

framework where the Stokes must: "(1) identify a challenged factual proposition

necessary to sustain the judgment; (2) identify all of the favorable evidence

supporting that position; and (3) demonstrate why that supporting evidence, when

 7McElvain alleges the Stokes fail to comply with Rule 84.04(e) in failing to identify how their

claims were preserved for appeal, failing to identify the standard of review for each claim, and in
including arguments beyond the scope of each point relied on. We agree. Rule 84.04(e) requires that
the argument is limited to the claim in the point relied on; that it includes a statement of how the
claim was preserved for review; and that it includes the standard of review for each point. "Compliance
with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not
become advocates by speculating on facts and arguments that have not been asserted." Stickley v.
Auto Credit, Inc., 53 S.W.3d 560, 562 (Mo. App. W.D. 2001). Failure to comply with Rule 84.04
preserves nothing for appellate review. Id. at 564. Here, the Stokes do not provide any statement on
how or if the claims were preserved; the Stokes arguably only provide the standard of review for point
one; and the arguments of each point exceed the allegations of error made in each point relied on. The
Stokes' failure to comply with the requirements of Rule 84.04 preserves nothing for review. In any
event, the Stokes' claims asserted in their points relied on fail on the merits as the Stokes fail to
demonstrate that the trial court's judgment is not supported by substantial evidence.

 5
considered with the reasonable inferences drawn therefrom, is so lacking in probative

value that the trier of fact could not reasonably believe the proposition." Sauvain,

437 S.W.3d at 303. "'Substantial evidence is that which, if true, has probative force

upon the issues, and from which the trier of fact can reasonably decide the case.'" Id.

(citation omitted). "'Any citation to or reliance upon evidence and inferences contrary

to the judgment is irrelevant and immaterial to an appellant's point and argument

challenging a factual proposition necessary to sustain the judgment as being not

supported by substantial evidence.'" Id. (citation omitted). "Such contrary facts and

inferences provide no assistance to this Court in determining whether the evidence

and inferences favorable to the challenged proposition have probative force upon it,

and are, therefore, evidence from which the trier of fact can reasonably decide that

the proposition is true." Houston, 317 S.W.3d at 186. "'[T]he trial court's judgment

is presumed valid, and the burden is on the [Stokes] to demonstrate its

incorrectness.'" Sauvain, 437 S.W.3d at 303 (quoting Houston, 317 S.W.3d at 186).

 The Stokes' argument for each point does not attempt to follow or even

acknowledge this mandatory three-step framework. Nonetheless, for both points on

appeal, the Stokes satisfy the first step by identifying a challenged factual proposition

necessary to sustain the judgment. "To acquire title by adverse possession . . .

possession must be: (1) hostile . . . (2) actual, (3) open and notorious, (4) exclusive,

and (5) continuous for the necessary period of years prior to the commencement of

action." Watson, 298 S.W.3d at 526. "Failure to prove even one element is fatal to a

claim of adverse possession." Daniels-Kerr v. Crosby, 484 S.W.3d 798, 802 (Mo. App.

 6
W.D. 2016). In Point I, the Stokes challenge the trial court's finding that McElvain

proved actual possession of the Disputed Property. In Point II, the Stokes challenge

the trial court's finding that McElvain proved hostile possession of the Disputed

Property. Thus, for both points on appeal, the Stokes satisfy the first step by

identifying a challenged factual proposition necessary to sustain the judgment.

 However, the Stokes fail to satisfy steps two or three in that they do not

identify all the favorable evidence in the record supporting the position that

McElvain's possession of the Disputed Property was both actual and hostile or

demonstrate why the favorable evidence along with reasonable inferences drawn

therefrom is so lacking in probative value that the trial court could not reasonably

find that McElvain's possession of the Disputed Property was both actual and hostile.

 Instead, in direct contravention of the distinct analytical framework expressly

required for the type of challenges they assert, the Stokes rely on incomplete evidence

and inferences contrary to the judgment to support their arguments. For example, in

Point I, the Stokes rely only on McElvain's testimony regarding some of her activities

on the Disputed Property and then argue that those activities are insufficient to

amount to actual possession. Likewise, in Point II, the Stokes argue that Theresa

Stokes' cousin, Chris Mick, hayed the Disputed Property demonstrating permissive

use such to defeat a claim of hostile possession, ignoring McElvain's testimony that

she hired Chris Mick to hay the Disputed Property.

 The Stokes make no attempt to identify all the favorable evidence that

supports the trial court's judgment, nor do they explain why the favorable evidence,

 7
when considered along with the reasonable inferences drawn from that evidence, does

not have probative force such that the trial court could not reasonably find that

McElvain proved actual and hostile possession. Additionally, the Stokes argue

negative inferences should be drawn from the facts that McElvain did not pay taxes

on the Disputed Property, cultivate crops on the Disputed Property, erect

improvements on the Disputed Property, or conduct substantial clearing activities on

the Disputed Property. However, referring this court to evidence and inferences

contrary to the judgment is irrelevant and immaterial to an appellant's point

challenging a factual proposition necessary to sustain the judgment as being not

supported by substantial evidence. Sauvain, 437 S.W.3d at 303. "An argument

repeatedly and materially based on such evidence and inferences has no analytical or

persuasive value and offers no support for [the Stokes'] claim of error." Sugar Ridge

Properties v. Merrell, 489 S.W.3d 860, 870 (Mo. App. S.D. 2016). "'Arguments raised

in the points relied on which are not supported by argument in the argument portion

of the brief are deemed abandoned and present nothing for appellate review.'" Id.

(citation omitted). Thus, the Stokes' "'[f]ailure to follow the applicable framework

means the appellant's argument is analytically useless and provides no support for

[their] challenge.'" Langston v. Langston, 615 S.W.3d 109, 116 (Mo. App. W.D. 2020)

(citation omitted).

 In any event, even if the Stokes had conformed their arguments to the correct

analytical framework, their claims fail. The record demonstrates substantial

 8
evidence supports the trial court's findings of actual and hostile possession by

McElvain.

 "The claimant's 'present ability to control the land' and 'his intent to exclude

others from such control' are relevant considerations in determining whether the

actual possession element is satisfied." Brasher v. Craig, 483 S.W.3d 446, 451 (Mo.

App. W.D. 2016) (citation omitted). "'Where the claimant occupies land without color

of title, in order to prevail, he must show physical possession of the entire area

claimed.'" Id. (citation omitted). "This is shown by any combination of 'continued

acts of occupying, clearing, cultivating, pasturing, building fences or other

improvements, and paying taxes.'" Id. (citation omitted). "'The performance of all or

any combination of these acts of occupancy serves as evidence of actual possession

but is not conclusive.'" Murphy v. Holman, 289 S.W.3d 234, 238 (Mo. App. W.D. 2009)

(citation omitted). "'Each case must be decided on its own peculiar facts.'" Id.

(citation omitted).

 "To satisfy the hostile element, the claimant must show that he intended to

occupy the disputed parcels as his own." Brasher, 483 S.W.3d at 451. "Hostile

possession does not imply 'ill will or acrimony.'" Id. (citation omitted). "In other

words, it is not necessary that the claimant intend to take the property away from

the true owner." Id. "Instead, '[i]t is the intent to possess, and not the intent to take

irrespective of his right, which governs.'" Id. at 452 (citation omitted).

 Here, the trial court found:

 9
 12. Plaintiff, and/or her assignees have continuously cleared,
 maintained, farmed, and otherwise physically utilized the Disputed
 Property for a period of more than ten years before June of 2017[.]

 13. Plaintiff, and/or her assignees have continuously cleared,
 maintained, farmed, and otherwise physically utilized the Disputed
 Property, with the intent to possess the Disputed Property as her own
 against the claim of any other person, for a period of more than ten years
 before June of 2017[.]

 14. Plaintiff, and/or her assignees did in fact occupy, possess and farm
 the Disputed Property for a period of more than ten years before June
 2017 by traveling over, clearing[,] maintaining[,] and farming the
 Disputed Property[.]

 15. Plaintiff, and/or her assignees cleared, maintained, farmed, and
 otherwise physically utilized the Disputed Property for a period of more
 than ten years before June of 2017, with the full knowledge of the
 Defendants and the Defendants' predecessors in ownership, and in open
 view to the public[.]

 16. Plaintiff, and/or her assignees were the only parties that cleared,
 maintained, farmed, and otherwise physically utilized the Disputed
 Property, for a period of more than ten years before June of 2017[.]

 17. The disputed area is the only way for Plaintiff to access the back
 portion of her property and she has used that area for such purpose since
 April of 2007[.]

 ....

 The Court finds that Plaintiff has established all elements of adverse
 possession and is entitled to obtain record title to the disputed
 property[.]

 At trial, McElvain testified that when she purchased the property, she was told

everything within the fence was her property. The previous owner, Ronnie Mick told

her that he built the house in 1998-99, and the whole fence line was there at that

time. McElvain testified that since 2007, when she purchased the property, she has

continuously treated and maintained the entire property located within the fences as

 10
her property. McElvain stated that the Disputed Property is used for hay for the

horses, hunting, hiking, and riding horses. She stated that it is the only access to the

back portion of the property. McElvain testified that she seeded, hayed,8 mowed and

cleared the property. She stated that she has fixed the fencing and fence posts.

McElvain testified she maintained the fencing of the property to keep others out in

addition to keeping horses on the property. McElvain testified that she hired Chris

Mick and Jim Hurley to cut the hay on the property every summer beginning in 2007,

and paid them for their services with a portion of the hay. McElvain stated she posted

a "no trespassing" sign on the fence on the front (east) boundary line. McElvain

testified that for approximately 13 years, at the time of trial, she had maintained the

property in the same manner as anyone who is a property owner of a similar rural

property that needs continuous maintenance.

 Jimmie Ranetta Adams ("Adams") testified that she has owned the property

across the street of McElvain's property since 1984 and that the fence separating

McElvain's and the Stokes' properties has been there, unchanged, since that time.

Adams stated that she saw the prior owner access the back pasture through the

Disputed Property. Adams stated that she has witnessed the McElvains hay the

Disputed Property. Adams stated that she has never seen any owner from the Stokes'

property working on the Disputed Property.

 8In the rural vernacular, "hay" is an action verb used to describe the aggregate process of

cutting, harrowing, baling, and transporting for storage the hay itself. As used here, "hayed" is the
past tense of "hay."

 11
 Judith Ann Case ("Case") testified that she has owned the property to the north

of McElvain's property since 1994. She stated that the fence in between McElvain's

property and the Stokes's property is visible from the road. She stated that the fence

has "been there forever," at least since she has lived there and it has not changed.

 Jim Hurley ("Hurley") testified that he owns property "around the corner" from

McElvain. Hurley testified that he baled hay on McElvain's property from

approximately 2012 to the time of trial and that no one else cut the hay since that

time. Hurley stated that while he was working on McElvain's property, no one ever

claimed that he was not authorized to be on the Disputed Property.

 The following evidence adduced at trial supports the trial court's judgment that

McElvain's possession of the Disputed Property was both actual and hostile:

 1. The Disputed Property is within McElvain's the fence line of her
 property.

 2. McElvain has continuously treated and maintained the entire
 property within the fence line since she purchased the property in
 2007. McElvain has seeded, mowed, hayed, and cleared trees from
 the Disputed Property.

 3. McElvain has maintained the fencing of the entire property to keep
 others out and keep her horses contained including fixing broken
 fences and replacing fence posts when needed.

 4. McElvain has used the Disputed Property as a hay field for her
 horses and for hunting, hiking, and riding horses. It is also the only
 access to the back portion of her property.

 5. McElvain was told by the previous owner that the Disputed Property
 was part of the parcel; that everything within the fencing was part
 of her parcel.

 6. McElvain posted a no trespass sign on the front boundary line fence
 of her property.

 12
 7. Neighbor Adams testified that the fence separating the McElvain's
 property from the Stokes' property has been there since 1984 and has
 never been changed.

 8. Neighbor Adams stated she has only witnessed the McElvain
 maintain the Disputed Property. She has never seen the Stokes or
 the previous owner of the Stokes' property maintain the Disputed
 Property.

 9. Neighbor Case stated that the fence separating the McElvain's
 property from the Stokes' property has been there since at least 1994
 and has not changed.

 Thus, even in the absence of the analytical defects, the Stokes' points would

fail. The trial court, as fact-finder, found that McElvain established that she

intentionally possessed, occupied, and maintained the Disputed Property to the

exclusion of others. The trial court's findings are supported by substantial evidence.

 Points I and II are denied.

 Conclusion

 We affirm the trial court's judgment.

 __________________________________________
 W. DOUGLAS THOMSON, JUDGE
All concur.

 13